UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOSEPH PHILLIPS on Behalf of Himself And All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CINCINNATI, <br><br> Defendant. | Case No. 1:18-cv-541 <br><br> Judge <br><br><br><br> CLASS-ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND JURY DEMAND |

Plaintiff Joseph Phillips, on behalf of himself and all others similarly situated, for his Complaint states the following:

## PRELIMINARY STATEMENT

1. This request for injunctive relief comes in an attempt to prevent the Defendant City of Cincinnati ("City") from removing the people encamped along Third Street between Main and Central Avenue, from removing the people encamped along Washington Way, and to prevent the City from enforcing policy 12.111, "Police Interaction with Homeless Encampments."[1]

## PARTIES

2. Plaintiff Joseph Phillips is, and was at all times relevant to this Complaint, a citizen of Hamilton County and a resident of the City of Cincinnati.

3. The City is a municipal corporation organized under the laws of the State of Ohio.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because Plaintiff's cause of action arises under the Constitution and laws of the United States.

---
[1] *See* Exhibit A: ""Police Interaction with Homeless Encampments."

5. This Court is the proper venue, pursuant to 28 U.S.C. § 1391(b), because it sits in the district where the Defendant is domiciled, and because this Court sits in the district where a substantial part of the acts and omissions relevant to Plaintiff's claims arose.

## FACTS

6. According to 2017 data compiled by the United States Department of Housing and Urban Development, the City has approximately 7,740 homeless citizens, 1,775 of which are children.[2] However, that figure does not reflect the actual number of homeless people because it reflects a "point in time count" one night of the year, and many cannot be found so as to be included in the count.

7. Men make up approximately 65 percent of the population, while women make up approximately 35 percent of the population. Sixty-one percent of the City's homeless people are black, 34 percent are white, and four percent are multiracial or of other races and or ethnicities.[3]

8. One half of one percent of the City's budget is devoted to combatting homelessness and providing social services to its homeless citizens.

9. The City has about a dozen shelters, which are unable to house all its homeless citizens.

10. The City has approximately 16,000 affordable homes and apartments, with approximately 56,000 people in need of affordable housing. That is, for every 100 of the lowest income households in Hamilton County, there are only 28 units of housing that are both affordable and available, resulting in an affordable housing shortage of approximately 40,000 units.[4]

11. For years, people have been living on Cincinnati's Third Street, between Walnut Street and Vine Street, in tents and other makeshift shelters (the "Third Street Camp").

---

[2] *See* Exhibit #: "HUD 2017 Continuum of Care Homeless Assistance Programs Homeless Populations and Subpopulations."
[3] *See* Id.
[4] *See* Exhibit #: "Housing Affordability in Hamilton County," dated February 2017.

12. During the past year, up 40 people have been living along Cincinnati's Washington Way in tents and other makeshift shelters (the "Washington Way Camp").

13. Plaintiff Joseph Phillips has lived in Cincinnati 18 years and has lived at the Third Street Camp two-and-a-half months. It has been 10 years since Mr. Phillips had indoor shelter. He has accessed one of the City's shelters, but he was kicked out for a rules violation and has not been allowed back. Mr. Phillips chose to live at the Third Street Camp because it is the safest place he knows to shelter. He has sheltered at upwards of 100 different outside locations, but he has had to abandon those locations because police officers forced him to move or be arrested. Mr. Phillips earns a living working odd jobs he gets by way of a temporary-hire agency. In the past, Mr. Phillips has worked as a roofer, concrete finisher, painter, construction laborer, for Amazon.com, McDonalds, KFC, and several others in the food service industry.

14. Under Ohio Revised Code (R.C.) § 2911.21, any person who knowingly enters or remains on the land or premises of another, without the privilege to do so, can be charged with criminal trespass. It is no defense that the land or premises is owned, controlled, or in the custody of a public entity.

15. The City cites homeless citizens for criminal trespass on public property pursuant to R.C. § 2911.21.[5]

16. On July 27, 2018, the City arrested the citizens living in the Washington Way Camp and destroyed their property, without regard for whether it was *bona fide* trash, in violation of policy 12.111[6] "Police Interaction with Homeless Encampments" ("Policy 12.111").

17. On July 30, City Mayor John Cranley said, "'Allowing activists to organize homeless camps in public right-of-ways poses a direct threat to public health and safety for those staying in

---

[5] *See* Exhibit #: "Trespass Warning," dated July 26, 2018.
[6] *See* Exhibit #.

encampments, and people who visit and work near these areas. Health officials have confirmed an outbreak of Hepatitis A, instances of HIV and have warned that encampments drastically increase the spread of communicable diseases. This is a public health emergency and we are required to respond in a way that ensures safety. Despite the availability of shelter beds and ongoing City assistance year after year, activists are encouraging homeless individuals to remain on the streets, risking their health and safety and preventing them from seeking the help and services they need. This is unacceptable and immoral.'"[7]

18. On July 31, 2018, the City posted and distributed notices in and around the Third Street Camp advising that the "area will be closed for cleaning and maintenance on Friday, August 3, 2018 from 2pm until work is completed."[8] The notice advised the reader to vacate the area, and that any personal property left behind would be considered abandoned.

## CLASS ALLEGATIONS

19. Plaintiff Joseph Phillips bring this action, on behalf of himself and all others similarly situated, under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following class:

> All people residing in the City of Cincinnati who (1) are or will become homeless in that they are, or will be, without fixed nighttime shelter; (2) have been cited or warned for criminal trespass on public property under R.C. § 2911.21; and or who (3) received actual or constructive notice to vacate Third Street, between Main and Central Avenue, by 2:00 p.m. on August 3, 2018.

20. Specifically, this action is brought under Rule 23(a)(1)-(a)(4) and Rule 23(b)(2).

**The Putative Class Satisfies Rule 23(a) in That It Is Impracticable to Join Thousands of People All of Whom Seek Relief from the City's Enforcement of Ohio's Criminal Trespass Statute.**

---

[7] (http://www.fox19.com/story/38771299/downtown-homeless-camp-sends-list-of-demands-to-city).
[8] *See* Exhibit #.

4

21. Members of the putative class are so numerous that joinder is impracticable. Approximately 7,740 of Cincinnati's citizens are homeless, an unknown number have been cited or warned for criminal trespass on public property, and approximately 30-35 received actual or constructive notice to vacate Third Street.

22. Joinder is also impracticable in that the putative class is fluid, with people potentially entering or exiting the class on a daily basis. Monitoring these changes, and joining and dismissing plaintiffs on an ongoing basis, would not be a practical way to manage this litigation.

23. The relief sought is common to all putative members of the class in that all seek relief from the City's enforcement of Ohio's criminal trespass statute, R.C. § 2911.21, for entering or remaining on public property.

24. This action involves common questions of law and fact:

    a. Does the City's application of Ohio's criminal trespass statute to citizens sleeping in public places violate their constitutional right to travel, free speech, privacy, due process, and or equal protection?
    b. Does forcibly removing someone sheltered on public property, under threat of 30 days in jail, without providing alternative shelter that complies with Ohio law a form of cruel and unusual punishment?
    c. Does residing in an encampment in a traditionally public forum constitute symbolic political speech?
    d. If residing in an encampment on public property constitutes symbolic political speech, does one have a First Amendment right to enter or remain on public property notwithstanding R.C. § 2911.21(A) and (B)?
    e. Does City policy number 12.111, "Police Interaction with Homeless Encampments," violate the constitutional rights of its citizens, or violate the rights guaranteed to its citizens by any other state or federal law?

25. The named Plaintiffs' claims are typical of the putative class members' claims in that their claims arise from the same course of conduct, namely the City's use of Ohio's criminal trespass statute to remove homeless citizens from public land.

5

26. The named Plaintiffs adequately represent the putative class in that all share the same interest remaining free from the threat of harassment, abuse, fine, arrest, and or imprisonment at the hands of the City for remaining on public land.

27. The named Plaintiffs are familiar with the City's ordinances and conduct challenged in this action, and they are prepared to respond to discovery requests. The named Plaintiffs are committed to fulfilling the role and duties of a class representative who seeks to protect the constitutional rights of Cincinnati's homeless citizens.

28. The named Plaintiffs are represented by Cook & Logothetis, LLC. Affidavits from Plaintiffs' counsel describing their qualifications will be submitted along with a motion for class certification.

29. The named Plaintiffs and their attorneys will fairly and adequately protect the interests of the putative class.

**The Putative Class Satisfies Rule 23(b)(1) in that Litigating Separate Actions by Individual Class Members Would Be Dispositive of the Interests of All Other Class Members.**

30. The putative class satisfies Rule 23(b)(1)(B) in that the answer to the common questions of law and fact listed above will be dispositive as to whether Plaintiffs possess the rights they seek to enforce by way of this action, and whether the Defendant's acts and omissions violated the rights Plaintiffs seek to enforce by way of this action.

**The Putative Class Satisfies Rule 23(b)(2) in that the City's Enforcement of R.C. § 2911.21 is Generally Applicable to the Entire Class Notwithstanding their Differences.**

31. Class action is appropriate in that the City acted, and refused to act, on grounds generally applicable to the class by using, or threatening to use, R.C. § 2911.21 to remove putative class members from public spaces.

32. Class action is appropriate in that the injunctive and declaratory relief sought for each claim would be applicable and appropriate to the class as a whole.

**The Putative Class Satisfies Rule 23(b)(3) in that Questions as to Whether the City's Conduct Violates the Constitutional Rights of its Citizens Predominates Over Questions Affecting Only Individual Class Members.**

33. The predominant question in this case is whether the City's use of Ohio's criminal trespass statute, to remove homeless citizens from public places, violates the constitutional rights of the putative class.

34. A class action is superior to other methods for fairly and efficiently adjudicating this controversy because there is no realistic alternative for members of the putative class to bring their claims. As homeless people, members of the putative class are unlikely to be able to retain counsel or file a claim *pro se*.

### CLAIMS FOR RELIEF

**Count One:
Right to Free Speech
(42 U.S.C. § 1983 and First Amendment to the U.S. Constitution)**

Plaintiffs incorporate all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

35. Sidewalks are traditionally public forums in which political speech can be regulated only by narrowly-tailored, content-neutral time, place and manner regulations that leave open ample means of alternative communication.

36. By living on Third Street, along Washington Way, or anywhere open and obvious to the public, Plaintiffs and putative class members are engaged in symbolic political speech calling attention to the City's affordable housing crisis.

37. Because Plaintiffs and putative class members are engaged in symbolic political speech calling attention to the City's affordable housing crisis, they have not only the privilege but the right to remain on land owned, controlled, or in the custody of the City pursuant to R.C. § 2911.21(A) and (B).

38. Because Plaintiffs and putative class members are engaged in symbolic political speech calling attention to the City's affordable housing crisis, the City's attempt to remove them because [they are bad for the City's image/their speech makes the City look bad], is a content-based restriction that violates their First Amendment right to speak in a traditionally public forum.

39. Removing Plaintiffs because [they are bad for the City's image/their speech makes the City look bad] is not a compelling government interest under any circumstances.

40. Removing Plaintiffs because they pose a potential public-health risk is not a compelling government interest absent any evidence of any actual public health risk.

41. Removing Plaintiffs, and others similarly situated, is not the least restrictive means of achieving the City's less-than compelling interest. The City's removal policy was adopted to silence speech with which it disagrees, and to insulate the City's more fortunate citizens from the feelings of shame and guilt engendered by the Plaintiffs' speech.

42. In the absence of the injunctive relief sought, Plaintiffs will either refrain from protected speech, or be ticketed and arrested for criminal trespass in violation of their First Amendment right to free speech in a traditionally public forum.

**Count Two:
Unreasonable Search and Seizure
(42 U.S.C. § 1983 and Fourth Amendment to the U.S. Constitution)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

43. The Fourth Amendment protects Plaintiffs, and putative class members, from unreasonable search and seizure of their person or their property.

44. Policy 12.111 allows police officers to search and or seize homeless citizens based solely on their presence in public a space or on public property.

45. It is *per se* unreasonable to search and seize, or to threaten to search and seize, persons and their property based solely on their presence in public a space or on public property.

46. It is *per se* unreasonable to search and seize, or to threaten to search and seize, persons and their property based on a policy that is unconstitutional.

47. In the absence of the injunctive relief sought, Plaintiffs and putative class members will be arrested and have their property seized, or will face the threat of arrest and property seizure, without reasonable suspicion of a crime in violation of the Fourth Amendment.

**Count Three:**
**Due Process**
**(42 U.S.C. § 1983 Fifth and Fourteenth Amendments to the U.S. Constitution)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

48. Plaintiffs, and putative class members, have a protected interest in their property under Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution.

49. Due process requires that the City provide Plaintiffs with sufficient pre-deprivation and post-deprivation notice that their property will be taken or has been, and an adequate opportunity to reclaim the property before it is destroyed.

50. Due process requires that the City to preserve the personal property of individuals arrested and taken into custody.

51. The City has failed to provide sufficient pre-deprivation and post-deprivation notice, and has failed to preserve Plaintiff's and putative class members' personal property, in violation of their Fifth Amendment right to due process.

52. Absent the injunctive relief sought, the City will continue failing to provide sufficient notice, and will continue failing to preserve Plaintiff's and putative class members' personal property in violation of their Fifth Amendment right to due process.

## Count Four:
## Cruel and Unusual Punishment
### (42 U.S.C. § 1983 and Eighth Amendment to the U.S. Constitution)

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

53. Whether to shelter oneself is not an option. Shelter is a basic human need, it is harmless, and creating one's own structure is an act inextricably linked to homelessness.

54. The City has only about a dozen shelters for its approximately 7,740 homeless citizens, so there are never enough beds for everyone in need.

55. The City has an affordable housing shortage of approximately 40,000 units.

56. It is cruel and unusual to search, seize, arrest, or imprison someone solely because they are homeless, particularly in a city without enough shelters or enough affordable housing.

57. Without the injunctive relief sought, Plaintiffs and others similarly situated will be ticketed, arrested, and faced with 30 days in jail either at 2:00 p.m. on August 3, 2018 or thereafter.

## Count Five:
## Equal Protection
### (42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution)

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

58. Under the Fourteenth Amendment, no state shall deny to any person within its jurisdiction equal protection of the law.

59. The City's black homeless population outnumbers its white homeless population by almost two to one.

60. The City's enforcement of Policy 12.111 disparately impacts its black citizens, homeless or not, in violation of their Fourteenth Amendment right to equal protection of the law.

61. Absent the injunctive relief sought, Plaintiff and putative class members will continue to suffer violations of their Fourteenth Amendment right to equal protection of the law.

**Count Six:**
**Right to Travel**
**(Privileges and Immunities Clause)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

62. Under the Privileges and Immunities Clause of the U.S. Constitution, "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." As far back as 1823, freedom of movement has been judicially recognized as a fundamental Constitutional right.

63. Laws unconstitutionally penalize travel if they deny someone a "necessity of life."

64. The City's policy of citing and or arresting Plaintiffs, and putative class members, for sleeping in public spaces violates their fundamental right to travel by denying them the necessity of a place to sleep.

65. Absent injunctive relief, the City will continue citing and or arresting people in violation of their constitutional right to travel.

## *Monell* Liability
## (42 U.S.C. § 1983)

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

66. The City is a state actor incorporated under the laws of the State of Ohio.

67. The City acts under color of law when citing, arresting, or imprisoning its homeless citizens pursuant to Policy 12.111 and Ohio trespass laws.

68. The City knew, or should have known, that Policy 12.111 violated its citizens' constitutional right to travel, free speech, privacy, due process, and equal protection, as well as its citizens' right to protection against cruel and unusual punishment.

69. City policy 12.111 caused Plaintiffs, and putative class members, to suffer deprivation of their constitutional right to travel, free speech, privacy, due process, and equal protection, and has caused them to suffer cruel and unusual punishment.

## **Injunctive Relief**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

70. Plaintiff is entitled to injunctive relief.

71. Plaintiff seeks to enjoin the City from removing those sheltered in the Third Street Camp, and from removing those sheltered along Washington Way.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and all members of the putative class, submit the following prayer for relief:

1. An order designating this suit as a class action;

2. A declaration that the City Policy 12.111 violates, and will continue to violate, the rights of its citizens under the Privileges and Immunities Clause, as well as under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution;

3. A temporary restraining order and injunction prohibiting the City from removing those sheltered in the Third Street Camp, and from removing those sheltered along Washington Way.

4. A temporary restraining order and injunction prohibiting the City from enforcing Policy 12.111 against anyone regardless of their living situation.

5. An award of reasonable attorneys' fees and costs; and

6. Any such other legal and equitable relief this Court deems just and proper.

                Respectfully Submitted,

                /s/ Bennett Allen
                _____

Bennett P. Allen (96031)
David M. Cook (23469)
COOK & LOGOTHETIS, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
P: (513) 287-6992
F: (513) 721-1178
dcook@econjustice.com
ballen@econjustice.com
*Attorneys for Plaintiffs*

## VERIFICATION OF JOSEPH PHILLIPS

STATE OF OHIO
COUNTY OF HAMILTON, SS:

Joseph Phillips, being first duly sworn, deposes and says as follows:

1. I am the Named Plaintiff in the foregoing Verified Complaint.

2. I have read the foregoing Verified Complaint, Temporary Restraining Order, and Preliminary Injunction. The contents of the Complaint are true to the best of my knowledge and belief.

_____
Joseph Phillips

Sworn to before me and subscribed in my presence this 2nd day of August, 2018

_____
Notary Public



Clement Lee Tsao, Attorney At Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec. 147.03 R.C.