## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| JOSEPH PHILLIPS on Behalf of Himself And All Others Similarly Situated, | Case No.: 1:18-cv-00541-TSB |
| Plaintiffs, | Judge Timothy S. Black |
| v. | |
| CITY OF CINCINNATI, | |
| HAMILTON COUNTY, OHIO, | |
| JOSEPH T. DETERS, HAMILTON COUNTY PROSECUTOR, | |
| And | |
| HAMILTON COUNTY COURT OF COMMON PLEAS, | AMENDED CLASS-ACTION COMPLAINT FOR INJUNCTIVE |
| Defendants. | RELIEF AND JURY DEMAND |

Plaintiff Joseph Phillips, on behalf of himself and all others similarly situated, for his amended Complaint states the following:

### PRELIMINARY STATEMENT

1. This amended Complaint comes in an attempt to enjoin the City of Cincinnati ("City"), and Hamilton County, Ohio (collectively referred to as "Defendants") from enforcing policy 12.111, "Police Interaction with Homeless Encampments,"[1] and from otherwise removing citizens experiencing homelessness from public spaces pursuant to Ohio Revised Code ("R.C.") §§ 2911.21, 5589.01, or 2925.

---

[1] *See* Exhibit A: "Police Interaction with Homeless Encampments."

2.    This amended Complaint comes also in an attempt to enjoin enforcement of the Temporary Restraining Order ("TRO") issued August 6, 2018, and the amended TRO issued August 7, by the Hamilton County Court of Common Pleas in the matter of *State of Ohio v. City of Cincinnati*, case number A1804285 ("Case A1804285").[2]

3.    This amended Complaint adds three defendants not listed in the initial Complaint filed August 3, 2018: (1) Hamilton County, Ohio; (2) Joseph T. Deters, Hamilton County Prosecutor; and (3) the Hamilton County Court of Common Pleas.

4.    Finally, this amended Complaint includes five claims for relief not included in the initial Complaint filed August 3, 2018: (1) enforcement of policy 12.111 violates the Americans with Disabilities Act; (2) Defendants' conduct constitutes a state-created danger under 42 U.S.C. § 1983 and the Fourteenth Amendment; (3) *Monell* liability as against Hamilton County, and the Hamilton County prosecutor; (4) a stay of State action in Case A1804285 pursuant to 28 U.S.C. § 2283; and (5) unconstitutional vagueness as to R.C. § 2911.21(A)(1)(B).

## PARTIES

5.    Plaintiff Joseph Phillips is, and was at all times relevant to this Complaint, a citizen of Hamilton County and a resident of the City of Cincinnati.

6.    The City is a municipal corporation organized under the laws of the State of Ohio.

7.    Hamilton County is a municipal corporation organized under the laws of the State of Ohio.

8.    The Hamilton County prosecutor is the official authorized by Ohio law to bring claims under Chapter 3767, and is the plaintiff in Case A1804285.

9.    The Hamilton County Court of Common Pleas has jurisdiction over claims brought pursuant to Chapter 3767, and has taken jurisdiction over Case A1804285.

---

[2] *See* Exhibit B: "Temporary Restraining Order," copy of entry filed August 6, 2018.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Plaintiff's cause of action arises under the Constitution and laws of the United States.

11. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) because this Court sits in the district where the Defendant is domiciled, and because this Court sits in the district where a substantial part of the acts and omissions relevant to Plaintiff's claims arose.

## FACTS

12. According to 2017 data compiled by the United States Department of Housing and Urban Development, the City has approximately 7,740 citizens experiencing homelessness, 1,775 of which are children.[3]

13. Men make up approximately 65 percent of the population, while women make up approximately 35 percent of the population. Sixty-one percent of the City's homeless people are black, 34 percent are white, and four percent are multiracial or of other races and or ethnicities.[4]

14. Nine tenths of one percent (0.9%) of the City's fiscal year 2018 General Fund budget was devoted to combatting homelessness and providing social services to its homeless citizens. One half of one percent (0.5%) of the City's fiscal year 2019 General Fund budget is devoted to combatting homelessness and providing social services to its homeless citizens.

15. The City has 11 shelters, which are unable to house all its homeless citizens either due to lack of space or due to rules restricting access.

16. The City has a dozen public restrooms, none of which include shower facilities, and none of which are open 24 hours.

---

[3] *See* Exhibit C: "HUD 2017 Continuum of Care Homeless Assistance Programs Homeless Populations and Subpopulations." (However, that figure does not reflect the actual number of homeless people because it reflects a "point in time count" one night of the year, and many people cannot be found so as to be included in the count.)
[4] *See* Id.

17. The City has approximately 16,000 affordable homes and apartments, with approximately 56,000 people in need of affordable housing.  That is, for every 100 of the lowest income households in Hamilton County, there are only 28 units of housing that are both affordable and available, resulting in an affordable housing shortage of approximately 40,000 units.[5]

18. For years, people have been living on Cincinnati's Third Street in tents and other makeshift shelters (the "Third Street Camp").

19. For the past year, up 40 people have been living along Cincinnati's Fort Washington Way in tents and other makeshift shelters (the "Fort Washington Camp").

20. Plaintiff Joseph Phillips has lived in Cincinnati 18 years and has lived at the Third Street Camp two-and-a-half months.  It has been 10 years since Mr. Phillips had indoor shelter.  He has accessed one of the City's shelters, but he was kicked out for a rules violation and has not been allowed back.  Forced to live outside, Mr. Phillips chose to live at the Third Street Camp because, being well traveled and well lit, it is the safest place he knows to shelter.  He has sheltered at upwards of 100 different outside locations, but he has had to abandon those locations because police officers forced him to move or be arrested.  Mr. Phillips earns a living working odd jobs he gets by way of a temporary-hire agency.  In the past, Mr. Phillips has worked as a roofer, concrete finisher, painter, construction laborer, for Amazon.com, McDonalds, KFC, and several others in the food service industry.

21. Under Ohio Revised Code (R.C.) § 2911.21, any person who knowingly enters or remains on the land or premises of another, without the privilege to do so, can be charged with criminal trespass.  It is no defense that the land or premises is owned, controlled, or in the custody of a public entity.

---

[5] *See* Exhibit D: "Housing Affordability in Hamilton County," dated February 2017.

22. The City cites citizens experiencing homeless for criminal trespass on public property pursuant to R.C. § 2911.21.[6]

23. On July 27, 2018, the City harassed and threatened the citizens living in the Fort Washington Camp and destroyed their property, without regard for whether it was *bona fide* trash, in violation of policy 12.111 "Police Interaction with Homeless Encampments"[7] ("Policy 12.111").

24. On July 30, the City's mayor said, "'Allowing activists to organize homeless camps in public rights-of-way poses a direct threat to public health and safety for those staying in encampments, and people who visit and work near these areas. Health officials have confirmed an outbreak of Hepatitis A, instances of HIV and have warned that encampments drastically increase the spread of communicable diseases. This is a public health emergency and we are required to respond in a way that ensures safety.'"[8]

25. On July 31, 2018, the City posted and distributed notices in and around the Third Street Camp advising that the "area will be closed for cleaning and maintenance on Friday, August 3, 2018 from 2pm until work is completed."[9] The notice advised the reader to vacate the area, and that any personal property left behind would be considered abandoned.

26. On August 3, 2018, this Court held a hearing regarding the motion for TRO Plaintiff filed that morning. After hearing, Plaintiff's motion was denied in part because the Court found the City has "a compelling interest to clean and maintain public property," because "[a]fter the City [was] done cleaning the area, Plaintiff and other individuals residing at the Third Street Camp [would] be permitted to return," and in part because [t]he two hours that the City require[d] to

---

[6] *See* Exhibit E: "Trespass Warning," dated July 26, 2018.
[7] *See* Exhibit A.
[8] (http://www.fox19.com/story/38771299/downtown-homeless-camp-sends-list-of-demands-to-city).
[9] *See* Exhibit F.

clean the Third Street Camp [was] a very narrow state action to achieve this compelling interest." *See* Order Denying Plaintiff's Motion For Temporary Restraining Order and Injunctive Relief.

27. To comply with this Court's Order, residents of the Third Street Camp began removing their belongings in order for the City to clean, and at approximately 2:00 p.m. cleanup efforts began. Police were present but did not become involved. There was no evidence of fecal matter or urine in or near the camp, nor was there evidence of illegal drug use. By 4:00 p.m., the cleanup was all-but completed, and most of the residents had returned to their respective campsite.

28. On August 6, 2018, the Hamilton County prosecutor filed a Complaint against the City in the Court of Common Pleas. For purposes of adjudging and declaring the Plaintiffs dangerous and harmful to the health and safety of the community, and a nuisance *per se* pursuant to R.C. § 3719.10, the Court found the prosecutor had established that "[t]he encampments have a general reputation for felony drug use occurring there."[10]

29. Based on those findings, the Court ordered encampments south of Central Parkway to the Ohio River "cleared through any lawful means including arrest," that all items remaining on the premises be stored or discarded, and ordered that the County Sheriff or Cincinnati Police Department issue a copy of the Court's order to anyone sheltered south of Central Parkway to the Ohio River.

30. In response to the Court's Order, beginning at approximately 9:00 p.m. on August 6, residents at the Third Street Camp and Fort Washington Camp began dismantling their shelters and packing their belongings. Before sunrise on August 7, all residents had relocated north of Central Parkway in compliance with the Court's order.

---

[10] *See* Exhibit B, paragraphs 1-6.

31. On August 7, the Court of Common Pleas granted the County prosecutor's motion to amend the area covered by its earlier to TRO "to include the additional area between I-71 and I-75 on the East and West and St. Route 562 on the North."[11]

## CLASS ALLEGATIONS

32. Plaintiff Joseph Phillips bring this action, on behalf of himself and all others similarly situated, under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following class:

> All people residing in the City of Cincinnati who (1) have lost or will lose their home and experience homelessness, or will be without fixed nighttime shelter of their own; (2) have been cited or warned for criminal trespass on public property under R.C. § 2911.21; and or who (3) received actual or constructive notice to vacate Third Street, between Main and Central Avenue, by 2:00 p.m. on August 3, 2018.

33. Specifically, this action is brought under Rule 23(a)(1)-(a)(4) and Rule 23(b)(2).

**The Putative Class Satisfies Rule 23(a) in That It Is Impracticable to Join Thousands of People All of Whom Seek Relief from the City's Enforcement of Ohio's Criminal Trespass Statute.**

34. Members of the putative class are so numerous that joinder is impracticable. Approximately 7,740 of Cincinnati's citizens will experience homelessness this year, an unknown number have been cited or warned for criminal trespass on public property, and approximately 30-35 received actual or constructive notice to vacate Third Street.

35. Joinder is also impracticable in that the putative class is fluid, with people potentially entering or exiting the class on a daily basis. Monitoring these changes, and joining and dismissing plaintiffs on an ongoing basis, would not be a practical way to manage this litigation.

---

[11] *See* Exhibit G.

36. The relief sought is common to all putative members of the class in that all seek relief from the City's enforcement of Ohio's criminal trespass statute, R.C. § 2911.21, for entering or remaining on public property.

37. This action involves common questions of law and fact:

   a. Does the City's application of Ohio criminal law to citizens sleeping in public places violate their constitutional right to travel, free speech, privacy, due process, and or equal protection?

   b. Does forcibly removing someone sheltered on public property, under threat of fine, jail, and or seizure of personal belongings, without providing alternative shelter that complies with Ohio and federal law a form of cruel and unusual punishment?

   c. Does residing in an encampment in a traditionally public forum constitute symbolic political speech?

   d. If residing in an encampment on public property constitutes symbolic political speech, does one have a First Amendment right to enter or remain on that property notwithstanding R.C. § 2911.21(A) and (B)?

   e. Does City policy number 12.111, "Police Interaction with Homeless Encampments," violate the constitutional rights of its citizens, or violate the rights guaranteed to its citizens by any other state or federal law?

38. The named Plaintiff's claims are typical of the putative class members' claims in that their claims arise from the same course of conduct, namely the City's use of Ohio's criminal trespass statute to remove homeless citizens from public land.

39. The named Plaintiff adequately represents the putative class in that all share the same interest in remaining free from harassment, threats, abuse, fine, arrest, and or imprisonment at the hands of the City for remaining on public land.

40. The named Plaintiff is familiar with the City's ordinances and conduct challenged in this action, and is prepared to respond to discovery requests. The named Plaintiff is committed to fulfilling the role and duties of a class representative who seeks to protect the constitutional rights of Cincinnati's citizens experiencing homeless.

8

41. The named Plaintiff and the putative class are represented by Cook & Logothetis, LLC. Affidavits from Plaintiffs' counsel describing their qualifications will be submitted along with a motion for class certification.

42. The named Plaintiff and his attorneys will fairly and adequately protect the interests of the putative class.

**The Putative Class Satisfies Rule 23(b)(1) in that Litigating Separate Actions by Individual Class Members Would Be Dispositive of the Interests of All Other Class Members.**

43. The putative class satisfies Rule 23(b)(1)(B) in that the answer to the common questions of law and fact listed above will be dispositive as to whether Plaintiff possesses the rights he seeks to enforce by way of this action, and whether the Defendant's acts and omissions violated the rights Plaintiff seeks to enforce by way of this action.

**The Putative Class Satisfies Rule 23(b)(2) in that the City's Enforcement of R.C. § 2911.21 is Generally Applicable to the Entire Class Notwithstanding their Differences.**

44. Class action is appropriate in that the City acted, and refused to act, on grounds generally applicable to the class by using, or threatening to use, R.C. § 2911.21 to remove putative class members from public spaces.

45. Class action is appropriate in that the injunctive and declaratory relief sought for each claim would be applicable and appropriate to the class as a whole.

**The Putative Class Satisfies Rule 23(b)(3) in that Questions as to Whether the City's Conduct Violates the Constitutional Rights of its Citizens Predominates Over Questions Affecting Only Individual Class Members.**

46. The predominant question in this case is whether the City's use of Ohio's criminal trespass statute, to remove homeless citizens from public places, violates the constitutional rights of the putative class.

9

47. A class action is superior to other methods for fairly and efficiently adjudicating this controversy because there is no realistic alternative for members of the putative class to bring their claims. As homeless people, members of the putative class are unlikely to be able to retain counsel or file a claim *pro se*.

## CLAIMS FOR RELIEF

### Count One:
### Right to Free Speech
### (42 U.S.C. § 1983 and First Amendment to the U.S. Constitution)

Plaintiffs incorporate all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

48. Sidewalks are traditionally public forums in which political speech can be regulated only by narrowly-tailored, content-neutral time, place and manner regulations that leave open ample means of alternative communication.

49. By living on Third Street, along Fort Washington Way, or anywhere open and obvious to other members of the public, Plaintiff and putative class members are engaged in symbolic political speech calling attention to the City's affordable housing crisis.

50. Because Plaintiff and putative class members are engaged in symbolic political speech calling attention to the City's affordable housing crisis, they have not only the privilege but the right to remain on land owned, controlled, or in the custody of the City pursuant to R.C. § 2911.21(A) and (B).

51. Because Plaintiff and putative class members are engaged in symbolic political speech calling attention to the City's affordable housing crisis, the City's attempt to remove them because their speech makes the City look bad, is a content-based restriction that violates their First Amendment right to speak in a traditionally public forum.

52. Removing Plaintiff and the putative class members because their speech makes the City look bad is not a compelling government interest.

53. Removing Plaintiff and the putative class members because they pose a potential public-health risk is not a compelling government interest absent any evidence of any actual public health risk. Even if a public health risk existed, dispersing those afflicted to areas where the cannot be found is not a response that ensures safety.

54. Removing Plaintiff, and others similarly situated, is not the least restrictive means of achieving the City's less-than compelling interest. The City's removal policy was adopted to silence speech with which it disagrees, and to insulate the City's more fortunate citizens from the feelings of shame and guilt engendered by the Plaintiffs' speech.

55. In the absence of the injunctive relief sought, Plaintiff and the putative class will either refrain from protected speech, or be ticketed and arrested for criminal trespass in violation of their First Amendment right to free speech in a traditionally public forum.

### Count Two:
### Unreasonable Search and Seizure
### (42 U.S.C. § 1983 and Fourth Amendment to the U.S. Constitution)

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

56. The Fourth Amendment protects Plaintiff, and putative class members, from unreasonable search and seizure of their person or their property.

57. Policy 12.111 allows police officers to search and or seize homeless citizens based solely on their presence in public space or on public property.

58. It is *per se* unreasonable to search and seize, or to threaten to search and seize, persons and their property based solely on their presence in a public space or on public property.

11

59. It is *per se* unreasonable to search and seize, or to threaten to search and seize, persons and their property based on a policy that is unconstitutional.

60. In the absence of the injunctive relief sought, Plaintiff and putative class members will be arrested and have their property seized, or will face the threat of arrest and property seizure, without reasonable suspicion of a crime in violation of the Fourth Amendment.

**Count Three:**
**Due Process**
**(42 U.S.C. § 1983 Fifth and Fourteenth Amendments to the U.S. Constitution)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

61. Plaintiffs, and putative class members, have a protected interest in their property under the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution.

62. Due process requires that the City provide Plaintiffs with sufficient pre-deprivation and post-deprivation notice that their property will be taken or has been taken, and an adequate opportunity to reclaim the property before it is destroyed.

63. Due process requires that the City preserve the personal property of individuals arrested and taken into custody.

64. The City has failed to provide sufficient pre-deprivation and post-deprivation notice, and has failed to preserve Plaintiff's and putative class members' personal property, in violation of their Fifth Amendment right to due process.

65. Absent the injunctive relief sought, the City will continue failing to provide sufficient notice, and will continue failing to preserve Plaintiff's and putative class members' personal property in violation of their Fifth Amendment right to due process.

**Count Four:**
**Cruel and Unusual Punishment**
**(42 U.S.C. § 1983 and Eighth Amendment to the U.S. Constitution)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

66. Whether to shelter oneself is not an option.  Shelter is a basic human need, it is harmless, and create one's own structure is an act inextricably linked to homelessness.

67. The City has only about a dozen shelters for its approximately 7,740 homeless citizens, so there are never enough beds for everyone in need.

68. The City has an affordable housing shortage of approximately 40,000 units.

69. It is cruel and unusual to search, seize, arrest, or imprison someone solely because they are homeless, particularly in a city without enough affordable housing or enough shelters.

70. Without the injunctive relief sought, Plaintiffs and others similarly situated will be ticketed, arrested, and faced with 30 days in jail either at 2:00 p.m. on August 3, 2018 or thereafter.

**Count Five:**
**Equal Protection**
**(42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

71. Under the Fourteenth Amendment, no state shall deny to any person within its jurisdiction equal protection of the law.

72. The City's black homeless population outnumbers its white homeless population by almost two to one.

73. The City's enforcement of Policy 12.111 disparately impacts its black citizens, homeless or not, in violation of their Fourteenth Amendment right to equal protection of the law.

74. Absent the injunctive relief sought, Plaintiff and putative class members will continue to suffer violations of their Fourteenth Amendment right to equal protection of the law.

**Count Six**
**Right to Travel**
**(Privileges and Immunities Clause)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

75. As far back as 1823, freedom of movement has been judicially recognized as a fundamental Constitutional right under the Privileges and Immunities Clause of the U.S. Constitution.

76. Laws unconstitutionally penalize travel if they deny someone a "necessity of life."

77. The City's policy of citing and or arresting Plaintiffs, and putative class members, for sleeping in public spaces violates their fundamental right to travel by denying them the necessity of a safe place to sleep, rest, and recuperate.

78. Absent injunctive relief, the City will continue citing and or arresting people in violation of their constitutional right to travel.

**Count Seven**
**Americans With Disabilities Act**
**(42 U.S.C. 12101 *et seq.*)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

79. Title II of the Americans With Disabilities Act ("ADA") provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be … denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

80. At all times relevant to this action, Defendants, their employees and agents, were public entities within the meaning of Title II of the ADA and provided programs or services to the general public including Plaintiffs.

81. At all times relevant to this action, Plaintiff and members of the putative class were qualified individuals with one or more disabilities within the meaning of Title II of the ADA and met the essential eligibility requirements under Title II.

82. Defendants' policies and practices in arresting and imprisoning Plaintiffs, and seizing and destroying Plaintiff's and putative class members' blankets, tents, and other protective gear and medications violated their rights on the basis of their disabilities in violation of 28 C.F.R. § 35.130(b)(3).

83. The acts and omissions of the Defendants, their agents, and employees subjected Plaintiff and putative class members to discrimination on the basis of their disabilities by destroying their property, and by storing any remaining items following the unlawful seizures in a way that was inaccessible and unreasonable.

84. Defendants knew, or should have known, that the incidence of disabilities for people experiencing homelessness is high, with estimates as high as more than one in two homeless individuals suffering from some significant cognitive, psychological, medical or physical disability, and many suffering from compound disabilities or co-morbid conditions.

85. Defendants knew, or should have known, that Plaintiff and putative class members have mental and or physical health issues that interfere with their daily living and prevent them from doing such things as obtaining affordable housing on their own.

86. As a public entity, Defendants are required to "make reasonable modifications in policies practices, or procedures when such are necessary to avoid discrimination on the basis of disability"

15

where, as here, modifications to would not "fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7).

87. Defendants' duty under 28 C.F.R. § 35.130(b)(7) includes the duty to make reasonable accommodations to preserve the essential life-protecting property of persons experiencing homelessness, as well as to provide prompt and reasonable access to storage facilities to ensure that individuals are able to recover seized property, and to provide accessible transportation to and from any storage facility.

88. The policies, practices and procedures challenged in this action, even if otherwise facially neutral, unduly burden persons who are without shelter and within the federal definition of "disabled" and "homeless."

89. Defendants committed the acts and omissions alleged herein with intent and or reckless disregard for the rights of the Plaintiff and putative class members.

90. Defendants and their agents and employees have failed to adopt ADA-compliant policies and procedures for interacting with citizens with disabilities who are experiencing homelessness.

91. As a result of Defendants' acts and omissions, Plaintiffs have suffered injury to their constitutional rights, their persons and property and are entitled to compensatory damages, damages according to the provisions of the ADA, and attorneys' fees.

**Count Eight**
**State-Created Danger**
**(42 U.S.C. § 1983, Fifth Amendment, and Fourteenth Amendment)**

Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully rewritten herein.

92. Defendants knew, or should have known, that many of the individuals who reside in the Third Street Camp and Fort Washington Camp have significant health risks exacerbated by living without adequate protection from the elements.

93. By threating to take and destroy Plaintiff's and the putative class' tents, tarps, blankets and clothing, and by ordering Plaintiff and the putative class members to vacate the premises pursuant to the Temporary Restraining Orders granted by Defendant Hamilton County Court of Common Pleas,[12] Defendants have created a danger for the Plaintiffs by exposing them to harsh weather elements.

94. Defendants knew, or should have known, that citizens experiencing homeless are more likely than other members of the public to be the victims of violent crime and or property crime.

95. By forcing Plaintiff and the putative class to abandon encampments located in well-lit and high-traffic areas, Defendants have created a threat of violence and victimization by other members of the public.

96. Absent the injunctive relief sought, the Plaintiff and putative class members will be harmed by dangers created by the Defendants' acts and omissions.

**Count Nine**
**_Monell_ Liability: Hamilton County and Hamilton County Prosecutor**
**(42 U.S.C. § 1983)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

97. The County is a state actor incorporated under the laws of the State of Ohio.

98. The County, the County prosecutor, and the County's officials act under color of law when citing, arresting, or imprisoning its homeless citizens pursuant to Policy 12.111 and or Ohio law.

---

[12] _See_ Exhibit B.

99. The County, the County prosecutor, and the County's officials acted in their official capacity and under color of law when filing a Complaint and Motion for *Ex Parte* Temporary Restraining Orders in case number A1804285.[13]

100.    The County knew, or should have known, that the above-listed acts and omissions violated its citizens' constitutional right to travel, free speech, privacy, due process, and equal protection, as well as its citizens' right to protection against cruel and unusual punishment.

101.    The Count's acts and omissions caused Plaintiffs to suffer deprivation of their constitutional right to travel, free speech, privacy, due process, and equal protection, and has caused them to suffer cruel and unusual punishment.

### Count Ten
### *Monell* Liability: City of Cincinnati
### (42 U.S.C. § 1983)

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

102.    The City is a state actor incorporated under the laws of the State of Ohio.

103.    The City, and its officials, act under color of law when citing, arresting, or imprisoning its homeless citizens pursuant to Policy 12.111 and or Ohio law.

104.    The City knew, or should have known, that the above-listed acts and omissions violated its citizens' constitutional right to travel, free speech, privacy, due process, and equal protection, as well as its citizens' right to protection against cruel and unusual punishment.

105.    City policy 12.111 caused Plaintiff, and putative class members, to suffer deprivation of their constitutional right to travel, free speech, privacy, due process, and equal protection, and has caused them to suffer cruel and unusual punishment.

---

[13] *See* Exhibits B and G.

18

**Count Eleven**
**Stay of State Court Proceedings**
**(28 U.S.C. § 2283)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows:

106.     Under 28 U.S.C. § 2283, a court of the United States may grant an injunction to stay proceedings in a State court if expressly authorized to do so by an Act of Congress, where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

107.     This Court may grant an injunction to stay the proceedings in the matter of *State of Ohio v. City of Cincinnati*, Hamilton County Court of Common Pleas Case A1804285 because the court is authorized to do so pursuant to 42 U.S.C. § 1983.

108.     This Court may grant an injunction to stay the proceedings in Case A1804285 in aid of its exclusive jurisdiction to hear claims arising under the Constitution of the United States.

109.     This Court may grant an injunction to stay the proceedings in Case A1804285 in order to protect and or effectuate a judgment that might conflict with the State's resolution of Case A1804285.

110.     Parties in the matter of *State of Ohio v. City of Cincinnati* are not *bona fide* adversaries.  Before the Plaintiff filed a lawsuit in this Court, the City intended to effectuate the same or similar result as that accomplished by the TROs issued in Case A1804285.

111.     The questions of law and fact to be resolved by the Court in this case are substantially the same as those to be resolved by the State in Case A1804285.  That is, notwithstanding the parties, whether the City and the County have violated the constitutional rights of their citizens experiencing homelessness lies at the heart of both cases, and it is a question yet to be litigated or decided.

112.     If Case A1804285 is permitted to proceed, the Court might issue a judgment in this case that conflicts with the State's resolution of Case A1804285.  For example, the Court of Common Pleas might find that Plaintiffs were not engaged in protected political speech so that permanently removing them from their encampments does not offend the Constitution regardless of the state's interest.  On the other hand, this Court might find that Plaintiffs *were* engaged in political speech so that any effort to remove them must be narrowly tailored to serve a compelling interest.

113.     Notwithstanding the parties and allegations, the constitutional rights of the City's homeless are at issue in Case A1804285.  Granting an injunction to stay those proceedings would aid in this Court's exclusive jurisdiction to hear constitutional claims and to protect and effectuate the judgments already issued in this matter.

### Count Twelve
### Vagueness
### (R.C. 2911.21(A)(1)(B))

114.     Under Ohio Revised Code (R.C.) § 2911.21, any person who knowingly enters or remains on the land or premises of another, without the privilege to do so, can be charged with criminal trespass.  It is no defense that the land or premises is owned, controlled, or in the custody of a public entity.

115.     The statute does not define "privilege," nor does the statute indicate how one is granted the privilege with respect to land or premises involved owned, controlled, or in the custody of a public agency as provided by R.C. § 2911.21(B).

116.     Without adequate notice as to whether one enjoys a privilege to remain on public property, in this case public sidewalks and rights of way, R.C. § 2911.21 is unconstitutionally vague in that it does not provide adequate notice that one might be subjected to a deprivation of

20

their liberty and property interest for sheltering in a public place, in violation of the Fifth Amendment's Due Process Clause.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and all members of the putative class, submit the following prayer for relief:

1. An order designating this suit as a class action;

2. A declaration that City Policy 12.111 violates, and will continue to violate, the rights of its citizens under the Privileges and Immunities Clause, as well as under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution;

3. A temporary restraining order and permanent injunction prohibiting the City from removing those sheltered in the Third Street Camp, and from removing those sheltered along Fort Washington Way.

4. A temporary restraining order and permanent injunction prohibiting the City from enforcing Policy 12.111 against anyone regardless of their living situation.

5. A temporary restraining order enjoining the Hamilton County Court of Common Pleas from proceeding in Case A1804285 pursuant to 28 U.S.C. § 2283.

6. An order vacating the TROs issued by the Court of Common Pleas in Case A1804285;

7. An award of reasonable attorneys' fees and costs; and

8. Any such other legal and equitable relief this Court deems just and proper.

Respectfully Submitted,

/s/ Bennett P. Allen
Bennett P. Allen (96031)
COOK & LOGOTHETIS, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202

P: (513) 287-6992
F: (513) 721-1178
ballen@econjustice.com

*Trial Attorney for Plaintiff*

/s/ David M. Cook
David M. Cook (23469)
COOK & LOGOTHETIS, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
P: (513) 287-6980
F: (513) 721-1178
dcook@econjustice.com

*Co-Counsel for Plaintiff*

## <u>VERIFICATION OF JOSEPH PHILLIPS</u>

STATE OF OHIO
COUNTY OF HAMILTON, SS:

      Joseph Phillips, being first duly sworn, deposes and says as follows:

1.     I am the Named Plaintiff identified in the foregoing Verified Amended Complaint.

2.     I have read the foregoing Verified Amended Complaint, Renewed Motion for Temporary Restraining Order, and Renewed Motion for Preliminary Injunction. The contents of the Complaint are true to the best of my knowledge and belief.

_____
Joseph Phillips

Sworn to before me and subscribed in my presence this ___ day of August, 2018

_____
Notary Public



Clement Lee Tsao, Attorney At Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec. 147.03 R.C.