**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **JOSEPH PHILLIPS on Behalf of Himself and All Others Similarly Situated,** )<br>)<br>)<br>) | **Case No.: 1:18-cv-00541-TSB** |
| **Plaintiffs,** )<br>) | **Judge Timothy S. Black** |
| **vs.** )<br>)<br>) | **PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO** |
| **CITY OF CINCINNATI, et al.,** )<br>)<br>)<br>) | **DISMISS BY DEFENDANTS HAMILTON COUNTY, HAMILTON COUNTY COURT OF COMMON** |
| **Defendants.** )<br>)<br>)<br>)<br>) | **PLEAS, AND JOSEPH T. DETERS PROSECUTING ATTORNEY** |

Plaintiff Joseph Phillips respectfully requests that this Court deny the Motion to Dismiss filed by Defendants Hamilton County (the "County"), the Hamilton County Court of Common Pleas, and Prosecuting Attorney Joseph T. Deters ("Prosecutor Deters"). (Doc. 26).

**INTRODUCTION**

In an approximately 400-square-mile area in Southern Ohio, Plaintiff Joseph Phillips and other chronically homeless people are subject to arrest merely because they are homeless. Certain officials in Cincinnati and Hamilton County, acting in their official capacities as government authorities, have effectively criminalized homelessness in all of the territory under their legal authority.

In his Second Amended Class-Action Complaint for Injunctive Relief (the "Complaint"), Phillips pleads various constitutional and statutory causes of action

against Defendants the City of Cincinnati (the "City"), Hamilton County, Prosecutor Deters, the Hamilton County Court of Common Pleas, and Hamilton County Court of Common Pleas Judge Robert P. Ruehlman ("Judge Ruehlman"). (Doc. 16.) Specifically, Phillips's Complaint alleges that after Phillips brought this lawsuit to enjoin the enforcement of City Policy 12.111 (the "Policy") (Doc. 16-1) against the homeless people in Cincinnati, Prosecutor Deters improperly brought a civil action against the City in Hamilton County Common Pleas Case Number A1804285 before Judge Ruehlman (the "State Court Case") seeking the Policy's state court enforcement. (Doc. 16 at ¶¶23-28.)

Phillips's Complaint alleges that Prosecutor Deters brought the State Court Case even though the County and the City were not *bona fide* adversaries. (*Id.* at ¶¶28, 110.) Nonetheless, Prosecutor Deters agreed that Hamilton County would be bound by, and would enforce, Judge Ruehlman's Order. (Doc. 26-1 at 12-17.) Judge Ruehlman then issued a series of temporary and permanent restraining orders in the State Court Case, including the Judgment Entry, Order and Permanent Injunction dated August 16, 2018 (the "Order") (*Id.* at 12-17), which have been used to threaten the homeless population in Cincinnati, and which underlie Phillips's claims against Hamilton County. (Doc. 16 at ¶¶28-29.)

Phillips's Complaint alleges that the actions of the City and County officials, acting in their official capacities, subjected the City and County to liability under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for violations of his civil rights. The Policy and Order challenged as unlawful in Phillips's Complaint remain in effect.

Defendants' actions, coupled with the County's inadequate housing resources, place Phillips and other citizens experiencing homelessness in ongoing peril.

## LAW AND ARGUMENT

### I. Federal Rule of Civil Procedure 12(b)(6) standards

#### a. Plaintiff's Second Amended Complaint states multiple valid claims.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) operates to test the sufficiency of the complaint and permits a Defendant to seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed.R.Civ.P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." For the purposes of a motion to dismiss, the Court must: (1) view the complaint in the light most favorable to the plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers,* 561 F.3d 478, 488 (6th Cir. 2009). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). For the reasons detailed in this brief, Plaintiff's Second Amended Complaint states multiple claims for which this Court can grant relief, and Defendant's Motion to Dismiss should be denied.

**b.** **This Court should disregard Defendants' references to matters outside of the pleadings in considering the Motion to Dismiss.**

The Court should disregard the news articles (Doc. 26-1 at 1-11) and the references to the affidavits from the hearing on Phillips's request for a temporary restraining order (Doc. 26 at 2, 5, 7, 10) in Defendants' Motion to Dismiss. In considering a Rule 12(b)(6) motion, a district court may not consider matters beyond the complaint. *Mediacom Se. LLC v. BellSouth Telecomms., Inc.,* 672 F.3d 396, 399 (6th Cir. 2012). The news articles and affidavits referenced in Defendants' Motion to Dismiss are not properly before this Court,[1] and thus should not be considered in evaluating Phillips's Complaint.

Moreover, temporary restraining order hearings are, by their nature, preliminary, and facts adduced at that stage should not be considered at later proceedings in the case, particularly in reviewing a 12(b)(6) motion. "The elaboration of these facts, contained in the affidavits supporting and objecting to the motion for temporary injunction, is not available for consideration, as these affidavits are a part of the record only for the purpose of determining the propriety of a temporary injunction." *Gibbs v. Buck*, 307 U.S. 66, 76

---

[1] There are limited circumstances in which a court may consider certain information outside of the complaint without converting a motion to dismiss to a motion for summary judgment. For purposes of motions to dismiss, a court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss *as long as they are referred to in the complaint and are central to the claims therein*." *Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 681 (6th Cir. 2011) (emphasis added) (quoting *Bassett v. NCAA,* 528 F.3d 426, 430 (6th Cir. 2008)). The news articles and the evidence from the TRO hearings were not referenced in Phillips's Complaint, and this Court should not consider those items in deciding Defendants' motion.

(1939) (citing *Polk Company v. Glover*, 305 U.S. 5, 9, (1938)); *see also Auto Inspection Servs., Inc. v. Flint Auto Auction, Inc.*, No. 06-15100, 2007 WL 674312, at *3 (E.D. Mich. Feb. 28, 2007) (Court not bound by factual determinations made while considering preliminary injunction); *William G. Wilcox, D.O., P.C. Employees' Defined Ben. Pension Tr. v. United States*, 888 F.2d 1111, 1113–14 (6th Cir. 1989) (collecting cases holding that facts developed at the TRO stage are not the "law of the case," and those factual issues remain to be litigated by the parties). Phillips is entitled to have the factual allegations contained in his Complaint accepted as true when considering Defendants' motion, and the Court should not consider evidence presented at the TRO hearings.

## II.    Phillips has standing to assert the claims in the Complaint.

Defendants assert that Phillips's claims are "abstract," and that this Court cannot provide redress for Phillips's injuries. (Doc. 26 at 5). Phillips's Complaint is anything but "abstract." Phillips alleges specifically that he lived at the Third Street Camp because there was no space available to him in a homeless shelter and because the Third Street Camp "is the safest place he knows to shelter." (Doc. 16 at ¶20). And, despite Defendants' assertions, Phillips has pleaded that the Third Street Camp did not present a health or safety threat and that there was no evidence of illegal drug use. (*Id.* at ¶27). Despite this, Defendants sought to remove Phillips from Third Street Camp "through any lawful means including arrest." (Doc. 26-1 at 15). These allegations present concrete injuries that Defendants caused, and Phillips suffered. Further, this Court can provide redress for

these injuries in the form of declaratory and injunctive relief to prevent further harm to Phillips and other chronically homeless people.

Phillips satisfies the three elements required for standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). First, Phillips has suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent." *Id.* Second, there is a causal connection between the injury and the conduct complained of. *Id.* And third, it is "likely" that the injury will be "redressed by a favorable decision." *Id.*

### a. Phillips alleges sufficient injuries to confer standing.

Phillips suffered an injury sufficient to meet the requirements of Article III when Defendants forced Phillips to vacate public property. (Doc. 16 at ¶27). Moreover, Defendants continue to threaten Phillips, and other chronically homeless people, with criminal prosecution and deprivation of personal property so long as the order and policy are in effect. *See* Order and Policy.

### i. The Defendants violated Phillips's and others' legally protected interests by ejecting them from public property.

Phillips enjoys constitutionally protected rights in his personal belongings, against unreasonable search and seizure, to engage in symbolic speech, to travel freely, equal protection of the laws, to be free from state created danger, against cruel and unusual punishment, and to due process when the state seeks to deprive him of those rights. *See Soldal v. Cook County*, 506 U.S. 56, 63-4 (1992) (holding that allegations that deputy sheriffs and manager of mobile home park dispossessed owners of their mobile home by

6

physically tearing it from foundation and towing it to another lot supported "seizure" claim within meaning of Fourth Amendment); *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (assuming, but not deciding, that sleeping in connection with a demonstration is symbolic conduct protected by the First Amendment); *Johnson v. City of Cincinnati*, 310 F.3d 483 (6th Cir. 2002) (holding that city ordinance banning persons convicted of drug crimes from "drug exclusion zones" violated the Fourth Amendment); *Rinaldi v. Yeager*, 384 U.S. 305 (1966) (holding that New Jersey statute imposing on only indigents the duty to reimburse county for cost of transcript in case of an unsuccessful appeal out of any institutional wages and not imposing the same financial burden on persons who received a suspended sentence constitutes a discriminatory classification violative of the Equal Protection Clause); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998) (holding that a state may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts or the state risks liability under a theory of state-created danger); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that "deliberate indifference" to a prisoner's serious medical needs is cruel and unusual punishment). Phillips suffered concrete and particularized injuries when Defendant violated each of these rights.

Phillips suffered concrete and particularized injuries when the City, Prosecutor Deters, and Judge Ruehlman, through the Order and Policy, unlawfully ejected Phillips from the Third Street Camp. (Doc. 26 at 6). Defendants' actions harmed Phillips in one of the most personal ways imaginable—requiring him to gather all his personal belongings and move under the threat of criminal penalty. (*Id*. at 4).

7

> ### ii. Phillips and others are subject to imminent arrest and deprivation of property for any violation of the overbroad Order.

Defendants also incorrectly allege that Phillips lacks standing to seek injunctive relief because the Order is enforceable only when space is available in shelters. (*Id.* at 5). This assertion is meritless. Phillips alleges that no space was available to him and that he was "forced to live outside." (Doc. 16 at ¶20). Phillips further stated in an affidavit that he was not able to return to the shelter house. (Doc. 17-1). In addition, Phillips alleges that he lived at the Third Street Camp because "it is the safest place he knows to shelter." (Doc. 16 at ¶ 20). Thus, Philips alleges that the Order has gone into effect despite his having no adequate shelter available to him, thereby criminalizing his homelessness.

Furthermore, the injuries suffered by Phillips are ongoing. (*Id.* at ¶31). Should Phillips or any other chronically homeless people return to or reconstitute one of the encampments, they face imminent criminal sanction under the Order and Policy. (Doc. 26-1 at 11-17; Doc. 16-1). Thus, not only has Phillips suffered concrete and particularized injuries in the past, he continues to be subject to Defendants' Order and Policy, which chills and criminalizes protected activities.

> ### b. Phillips's injuries are a direct result of the challenged orders.

Defendants caused each and every injury suffered by Phillips and other chronically homeless people. All Defendants played roles in the issuance of the Order, the enforcement of the Policy, and the removal of putative class members from the Fort Washington Camp and the Third Street Camp. (Doc. 16. at ¶¶23-29). For example, Prosecutor Deters initiated an action in the Hamilton County Court of Common Pleas,

contending that the encampments had "a general reputation for felony drug use." (*Id.* at ¶28). The City issued and enforced the Policy which criminalizes homelessness. (*Id.* at ¶1). The City enforced the Policy and issued copies of the Order in an effort to remove the homeless from their camps. (*Id.* at ¶25). Thus, Defendants are responsible for causing the injuries complained of in this lawsuit.

### c.   This Court can provide relief for Phillips's past and future injuries.

This Court can provide redress for Phillips and other chronically homeless people in the form of declaratory and injunctive relief. Specifically, Phillips has requested relief in three distinct ways. (Doc. 16 at ¶21). First, Phillips has requested that the Court declare that the Policy violates the rights of citizens under the Privileges and Immunities Clause, as well as the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. (*Id.*). Declaring the Policy unconstitutional would prevent Defendants from continuing to use the Policy to harass the homeless and violate their constitutional rights. Second, Phillips has requested that the Court permanently enjoin defendants from removing citizens from public property pursuant to the Order and Policy. (*Id.*) A permanent injunction would provide Phillips with redress by preventing further injuries, and would also prevent Defendants from continuing to use the Policy as means to harass and remove the homeless from public property. Finally, this Court could vacate Judge Ruehlman's Order. Judge Ruehlman ordered that the homeless encampments be cleared. (Doc. 16 at ¶29). Vacating the Order would afford redress by permitting Phillips and others to return to the Third Street Camp and other encampments.

> **d.** **The challenged Orders and Policy are still in effect, and Phillips has standing for a pre-enforcement challenge of those policies.**

Phillips also has standing for a pre-enforcement challenge of the Orders and Policy that are still in effect. Indeed, "in a pre-enforcement review case under the First Amendment, courts do not closely scrutinize the plaintiff's complaint for standing when the plaintiff claims an interest in engaging in protected speech that implicates, if not violates, each provision of the law at issue." *Platt v. Board of Comm'rs on Grievances and Discipline of Ohio Supreme Court*, 769 F.3d 447, 451 (6th Cir. 2014) (internal quotations omitted). *See also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.")

In order to have standing for a pre-enforcement challenge, a plaintiff must allege (1) "an intention to engage in a course of conduct implicating the Constitution"; and that (2) "the threat of enforcement of the challenged law" against them is "credible." *Platt*, 769 F.3d at 451-52 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). First, Phillips alleges that he wants to remain at the Third Street Camp. (Doc. 17; Doc. 16 at ¶20). Second, the threat of enforcement for doing so is credible because Judge Ruehlman's Order and the Policy remain in effect. Phillips is under an immediate, credible threat of criminal or civil penalties should he engage in protected activity which violates the Order or Policy.

**IV.    Phillips's claims are not moot.**

Defendants incorrectly argue that because the encampment at issue no longer exists, Phillips's requests for injunctions are moot. Mootness occurs "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). A dispute remains live when a litigant can point to "governmental action or policy that has adversely affected and continues to affect a present interest," *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975); *Cleveland Nat. Air Show, Inc. v. U.S. Dept. of Transp.*, 430 F.3d 757, 761 (6th Cir. 2005).

**a.    The challenged Order and Policy are still in effect.**

The controversy is still live because the Order and Policy remain in effect, and cover constitutionally protected behavior. Any time someone sets up a tent anywhere in Hamilton County, they are at risk of arrest by the police. (Doc. 26-1 at 16). Phillips has not had permanent indoor shelter in ten years, and "[h]e has sheltered at upwards of 100 different outside locations, but he has had to abandon those locations because police officers forced him to move or be arrested." (Doc. 16 at ¶20). Defendants claim that the "encampment at issue no longer exists" (Doc. 26 at 6), but Defendants' enforcement of the Policy and Order did not end homelessness. Defendants' continuing threat of

enforcement of the Policy and Order put Phillips and other chronically homeless people in legal jeopardy due to their necessary and inevitable encampment.

> **b.      An order requiring homeless people to vacate public property or face criminal penalties is not analogous to release from prison.**

Defendants contend that Phillips's claims for injunctive relief are moot by comparing his claims to prisoners whose claims for injunctive relief were moot once they were transferred to a different facility. (Doc. 26 at 6). In each of the cases Defendants cite, however, the actual controversy ceased because the activity the plaintiffs sought to enjoin had ended. That contrasts with this case, where the Policy and Order remain in effect and currently threaten Phillips and any homeless person that violates them with arrest. Additionally, there is significant difference between an inmate's release or transfer from prison, and a homeless person's forcible removal by the police under threat of arrest from the one place they felt safe and at home.

> **c.      Phillips's claims are not moot because Defendants' enforcement of the Orders and Policy is capable of repetition and evading judicial review.**

A dispute remains live for purposes of justiciability when it is "capable of repetition, yet evading review." *Weinstein,* 423 U.S. 147 at 149. *See also FEC v. Wisconsin Right to Life,* 551 U.S. 449, 462 (2007) (First Amendment challenge to broadcast restrictions not moot despite the passing of an election cycle). The "capable of repetition, yet evading review" exception applies when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Cleveland Nat. Air Show, Inc.,* 430 F.3d 757 at 761.

The underlying dispute is capable of repetition because at any time Phillips or the other members of the putative class could be arrested under the Order or Policy as long as they are living on the street (Doc. 26-1 at 16). The City's inability to provide shelter to all homeless makes criminal prosecution a very real possibility. (Doc. 16 at ¶¶15, 20). Every time a tent or some other form of shelter goes up, its inhabitant is subject to arrest.

Dismissing Phillips's claims for injunctive relief as moot would allow Defendants' continuing unconstitutional conduct to evade review. This is especially true because the challenged action is too short in duration to be fully litigated before the camps are taken down: The Order states that the police officers must provide a copy of the order to anyone violating it, and if they do not immediately comply with the order, they can be arrested. (Doc. 26-1 at 16). If Phillips and the other homeless people had to file a lawsuit every time they were ordered to disperse under the Order, the Courts could never determine the constitutionality of Defendants' conduct. For these reasons, Phillips's claims are not moot.

**V.     Phillips pleads sufficient facts that Defendants violated his First Amendment rights by ordering him to leave public property.**

Defendants ask this Court to dismiss Phillips's prayer to enjoin "the enforcement of Judge Ruehlman's permanent injunction Order" based on their assertion that the Supreme Court in *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984) ruled that there is no right to camp. (Doc. 26 at 7). Not only has Phillips pleaded sufficient allegations which, accepted as true for purposes of Defendants' Motion to Dismiss, state

13

a plausible claim to relief, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), but the *Clark* Court never decided that there is no constitutional right to camp.

    **a. Phillips alleges that he was engaged in symbolic speech entitled to First Amendment protection and that Defendants' actions were directly related to suppressing that protected expression.**

In his Complaint, Phillips states that he and the "putative class members are engaged in symbolic political speech calling attention to the City's affordable housing crisis." (Doc. 16 at ¶49). Symbolic speech is protected where there is "[a]n intent to convey a particularized message . . . and in the surrounding circumstances the likelihood [is] great that the message [will] be understood by those who vie[w] it." *Spence*, 418 U.S. at 410-11. Phillips intended to convey his message through the encampment on Third Street because it was "open and obvious to other members of the public." (Doc. 16 at ¶ 49). Because of the encampment's prominent placement, Phillips's message protesting the City's affordable housing crisis was likely to be conveyed to, and understood by, the general public to "mak[e] the City look bad." (*Id.* at ¶¶51-52). Phillips's message was not only likely to be conveyed, but it was actually received, as the City characterized Phillips and others as "activists" before removing them based on the content of their symbolic speech. (*Id.* at ¶¶ 24, 51). Phillips's Complaint contains sufficient factual allegations to state a claim that Defendants impermissibly targeted the content of his expression in violation of his First Amendment rights.

**b. Judge Ruehlman's Order is unconstitutionally overbroad.**

Phillips has sufficiently pleaded that the Order is overbroad and violates the First Amendment's protections on symbolic speech. In *United States v. O'Brien*, 391 U.S. 367 (1968), the Court laid out how a restriction on symbolic speech could be constitutional:

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377. The Order does not further a government interest, the asserted government interest is directly related to the suppression of constitutionally-protected symbolic speech, and the restrictions imposed by the Order go well beyond what is essential to the furtherance of any government interest.

Courts do not assume that a nexus exists between a restriction on speech and the asserted state interest. *Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 496 (1986) (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 803 n. 22 (1984)); *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664 (1994) (plurality). Judge Ruehlman cites "the health and safety of the community" as the government interest at issue. (Doc. 26-1 at 15). The Order does not connect this interest to any conduct in the encampments. The Order merely notes that "[i]n the last few months felony drug offenses involving the use of heroin *have occurred* . . ." (*Id.* at 13) (emphasis added). Nothing in the Order connects its restrictions to overdoses, public sex acts, or anything related to community health and safety at all. The Order targets the encampments themselves, not any activities that

15

Defendants claim occurred therein. "[T]he health and safety of the community," if it is an important or substantial government interest at all, *see Preferred Communications*, 476 U.S. at 496, is not implicated here. (Doc. 26-1 at 14-15).

Furthermore, an outright ban on camping equipment such as tents in public areas burdens far more speech than would be necessary to further the government's asserted interest—that is, it is far from narrowly-tailored and is overbroad. To be narrowly-tailored, "[a] restriction must not burden substantially more speech than necessary to achieve the government's asserted interests." *Lexington H-L Servs. v. Lexington-Fayatte Urban Cty. Gov't*, 879 F.3d 224, 229 (6th Cir. 2018) (quoting *McCullen v. Coakley*, 134 S. Ct. 2518, 2535-37 (2014)) (internal quotation marks and punctuation omitted). In *McCullen*, the Court held that a statute effectively criminalizing the act of standing on a public sidewalk within 35 feet of an abortion facility was not narrowly-tailored and was overbroad and, thus, unconstitutional. *McCullen*, 134 S. Ct. at 2537.

The permanent injunction here subjects "any person found erecting tents or other shelter on . . . public grounds" to arrest, (Doc. 26-1 at 16) and in doing so goes far beyond what is necessary to achieve the government's interests. An individual peacefully debating public issues, or distributing leaflets, or creating art on public property who erected a tent for relief from the sun is subject to arrest under the permanent injunction. (*Id.* at 15). The permanent injunction here is strikingly similar to—if not more offensive than—the "truly exceptional" statute at issue in *McCullen*. *See McCullen*, 134 S. Ct. at 2526. The permanent injunction is not narrowly-tailored and, as such, Defendants' motion to dismiss fails on this front.

16

Finally, Defendants' contention "that there is no right to sleep or camp in a public space" (Doc. 26 at 6) is both incorrect and inapposite. To support this conclusion, Defendants cite *Clark v. Community for Creative Non-Violence*. In that case, however, the Court stated "that overnight sleeping in connection with the demonstration is expressive conduct protected to some extent by the First Amendment. We assume for present purposes, but do not decide, that such is the case." *Clark*, 468 U.S. at 293. Moreover, numerous federal courts have found that erecting tents or other shelters as expressive conduct is protected expression. *See Watters v. Otter*, 955 F. Supp.2d 1178, 1185 (D. Idaho 2013) ("Occupy Boise's tent city and overnight camping constitute expressive conduct protected under the First Amendment".); *Occupy Fort Myers v. City of Fort Meyers*, 882 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011) ( "[T]he tenting and sleeping in the park as described by plaintiffs' council is symbolic conduct which is protected by the First Amendment".); *Metropolitan Council, Inc. v. Safir*, 99 F. Supp. 2d 438, 439 (S.D.N.Y. 2000)  "[T]he First Amendment of the United States Constitution does not allow the City to prevent an orderly political protest from using public sleeping as a means of symbolic expression".).

Even if there were no right to camp, it does not matter; Phillips engaged in symbolic speech to draw attention to Cincinnati's affordable housing crisis. (Doc. 16 at ¶49). Phillips's Complaint alleges that Defendants violated his right to symbolic speech protected by the First Amendment, not that Defendants violated his right to camp.

**VI.    Phillips alleges that the Hamilton County Prosecutor, acting in an official capacity, violated Phillips's constitutional rights.**

    **a.  Prosecutor Deters does not enjoy absolute immunity for actions taken in his official capacity.**

Defendants assert that Prosecutor Joseph T. Deters is protected by absolute immunity and therefore must be dismissed as a defendant. (Doc. 26 at 9-10) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). Such immunity may apply to claims against Prosecutor Deters in his *individual* capacity. Phillips's Complaint, however, asserts claims against Prosecutor Deters in his *official* capacity, alleging specifically that, as a County policymaker, Prosecutor Deters sought an order against Phillips and other class members. (Doc. 16 at ¶¶ 97-101).

Phillips alleges that Prosecutor Deters acted "under color of law when citing, arresting, or imprisoning its homeless citizens pursuant to The Policy and or Ohio law." (*Id.* at ¶ 98). Further, the Complaint states, Deters "acted in [his] official capacity and under color of law when filing a Complaint and Motion for *Ex Parte* Temporary Restraining Orders in case number A1804285." (*Id.* at ¶ 99). All such conduct was taken in Prosecutor Deters's official capacity. Accordingly, Phillips's claims against Deters are not barred under absolute immunity.

    **b.  Prosecutor Deters acted as a policymaker in creating a policy which threatens to cite, arrest, and imprison Phillips in violation of his constitutional rights, for which Hamilton County may be held liable.**

 "State law determines who has the final policymaking authority." *Stone v. Holzberger*, 807 F. Supp. 1325, 1335 (S.D. Ohio 1992) (citing *Jett v. Dallas Independent School*

*District*, 491 U.S. 701, 737 (1989)). "Under Ohio law,[2] the Sheriff and the Prosecutor are

the officials who make policy for [the County] with regard to the operation of their offices

and discharge of their duties." *Id.* (discussing *Pembaur v. City of Cincinnati,* 475 U.S. 469

(1986)). As the County Prosecutor, Deters thus makes policy for the County.

Phillips's claims regarding and against Prosecutor Deters in his official capacity

establish the County's liability. Courts regard "an official capacity suit as a suit against

the municipality itself." *Jorg v. City of Cincinnati*, 145 F. App'x 143, 146 (6th Cir. 2005)

(discussing *Leach v. Shelby County*, 891 F.2d 1241, 1245 (6th Cir. 1989)). A local government

may be sued "when execution of a government's policy or custom . . . inflicts the injury

that the government as an entity is responsible for under § 1983." *Monell*, 436 U.S. at 694.

Here, Hamilton County is liable for Prosecutor Deters's actions taken in his official

capacity.

Prosecutor Deters has final policymaking authority for the County, rendering the

County liable for his unconstitutional actions causing Phillips's injuries. As stated in

Phillips's Complaint, "[the Policy] allows police officers to search and or seize homeless

citizens based solely on their presence in public space or on public property." (Doc. 16 at

¶57). Deters also initiated the action that resulted in the challenged Order, and signed the

Order binding Hamilton County to the requirements of the Order. (*Id.* at ¶28; Doc. 26-1

at 17). In sum, Hamilton County may be held liable for Prosecutor Deters's action taken

---

[2] The Sixth Circuit Court of Appeals "concluded, based upon its examination of Ohio law, that both the County Sheriff and the County Prosecutor could establish county policy under appropriate circumstances, a conclusion that [the Supreme Court did not question]." *Pembaur*, 475 U.S. at 484.

as policymaker that caused Phillips and other chronically homeless people their constitutional injuries.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Joseph Phillips respectfully requests that this Court deny the Motion to Dismiss filed by Defendants Hamilton County, the Hamilton County Court of Common Pleas, and Prosecuting Attorney Joseph T. Deters.

Respectfully submitted,

/s/ Andrew C. Geronimo
Andrew C. Geronimo (OH# 86630)
*Attorney at Law*
/s/ Avidan Y. Cover
Avidan Y. Cover (OH# 87534)
*Attorney at Law (Admission Pending)*

/s/ Jaclyn Cole
Jaclyn Cole*
/s/ Taylor Frank
Taylor Frank*
/s/ Samuel Ottinger
Samuel Ottinger*
/s/ Samuel Sheffield
Samuel Sheffield*
*Certified Legal Interns*
*(Admission pursuant to S.D. Ohio Civ. R.*
*83.6 pending)*

CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
MILTON A. KRAMER LAW CLINIC CENTER
11075 East Boulevard
Cleveland, Ohio 44106
(216)-368-2766

/s/ Bennett P. Allen
Bennett P. Allen (OH# 96031)
COOK & LOGOTHETIS, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
P: (513) 287-6992
F: (513) 721-1178
ballen@econjustice.com
*Trial Attorney for Plaintiff*

## PROOF OF SERVICE

The undersigned certifies that on November 27, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

/s/ *Andrew C. Geronimo*
Andrew C. Geronimo (OH# 86630)
Case Western Reserve University
    School of Law
Milton A. Kramer Law Clinic Center
11075 East Boulevard
Cleveland, OH 44106-7148
P: (216) 368-2766
F: (216) 368-5137
acg33@case.edu
*One of the Attorneys for Plaintiff*