**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH PHILLIPS, | : | Case No. 1:18-cv-541 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| CITY OF CINCINNATI, *et al*., | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**THIRD AMENDED COMPLAINT (Doc. 34) AND**
**GRANTING HAMILTON COUNTY DEFENDANTS'**
**MOTION TO DISMISS (Doc. 26)**

This civil action is before the Court on Plaintiff Joseph Phillip's corrected motion for leave to file third amended complaint (the "motion to amend") (Doc. 34)[1] and the parties' responsive memoranda (Docs. 41, 43, 44, 45). Also before the Court is Defendants Hamilton County, Hamilton County Court of Common Pleas, and Hamilton County Prosecutor Joseph T. Deters (collectively, "Hamilton County Defendants")'s motion to dismiss (Doc. 26) and the Plaintiff's memorandum in opposition (Doc. 37).

---

[1] Plaintiff filed an initial motion for leave to file third amended complaint on November 19, 2018 (Doc. 33) and filed a corrected motion the next day. Plaintiff's initial motion (Doc. 33) is **DENIED** as moot.

# I.    BACKGROUND[2]

This case arises out of a City of Cincinnati (the "City" or "Cincinnati") policy banning homeless encampments.  Plaintiffs' Third Amended Complaint highlights the crisis of homelessness throughout Cincinnati.  According to data compiled by the United States Department of Housing and Urban Development ("HUD"), Cincinnati has approximately 7,740 citizens who will experience homelessness during a calendar year, of whom 1,774 are children.  (Doc 34-1 ¶ 24).[3]  Cincinnati has approximately 16,000 affordable homes and apartments, but approximately 56,000 individuals are in need of affordable housing.  (Doc. 34-3, Ex. G).  Moreover, only .9% of the City's 2018 budget and .5% of the City's 2019 budget was allocated to combating homelessness and providing social services to individuals experiencing homelessness.  (Doc. 34-1 ¶ 26).  In short, this is a significant case; and it is by no means finished.

Plaintiff Joseph Phillips,[4] a Cincinnati resident who has been without indoor shelter for ten years, brought this action on August 3, 2018 to challenge the

---

[2] The facts outlined in this Order are from Plaintiff's proposed Third Amended Complaint. (Doc. 34-1).  As the Court discusses below, while some of Plaintiff's proposed amendments are futile, other proposed amendments—including adding additional Plaintiffs and bolstering the complaint with additional facts—are well-taken.

[3] Groups such as the National Law Center on Homelessness & Poverty have criticized HUD's "Point in Time" calculation as underestimating number of individuals experiencing homelessness throughout the United States.  *See* NATIONAL LAW CENTER ON HOMELESSNESS & POVERTY, DON'T COUNT ON IT: HOW THE HUD POINT-IN-TIME COUNT UNDERESTIMATES THE HOMELESSNESS CRISIS IN AMERICA (2017).

[4] The Third Amended Complaint also adds Patrick Chin, a Cincinnati resident, and Greater Cincinnati Homeless Coalition, a non-profit organization engaged in coordinating services, educating the public, and advocating on behalf of citizens experiencing homelessness, such as Plaintiffs in this action.

constitutionality of the City's homeless encampment policy (the "Encampment Policy")

("12.111 Police Interaction with Homeless Encampments"; Doc. 34-3, Ex. A) and filed a

motion for a temporary restraining order (Doc. 2) to enjoin the City from requiring

individuals encamped on Cincinnati's Third Street, between Walnut Street and Vine

Street (the "Third Street Camp") to vacate the area on that day at 2:00 p.m. In justifying

the need to clean and maintain the Third Street Camp, Mayor Cranley stated: "Allowing

activists to organize homeless camps in public rights-of-way poses a direct threat to

public health and safety for those staying in encampments, and people who visit and

work near these areas . . . This is a public health emergency and we are required to

respond in a way that ensures safety." (Doc. 34-1 ¶ 67).

On August 3, 2018, the Court held a hearing on Plaintiff's temporary restraining

order and ultimately denied the motion, finding that the City had a compelling interest to

clean and maintain public property, especially when there are public health concerns, and

that <u>the state action was narrowly drawn as it would permit the residents of the Third

Street Camp to return after only two hours</u>. (Doc. 4). The residents of the Third Street

Camp complied with the Court's Order, the encampment was cleaned, and residents

returned. The City gathered no evidence of human waste in or near the camp, nor did the

City find evidence of illegal drug use. (Doc. 34-1 ¶ 70).

After the residents returned to the Third Street Camp, proposed Defendant

Cincinnati Mayor John J. Cranley released the following statement:

> It is unacceptable that individuals and activists continue to illegally
> camp with tents in the right-of-way. This presents a clear and
> present health and safety hazard to homeless individuals and the
> general public. The city is working hard to end this. This afternoon,
> I also asked for and have obtained the assistance of Hamilton County
> Prosecutor Joe Deters. Prosecutor Deters will be filing actions in
> state court and we will file motions in federal court. I thank
> Prosecutor Deters for his help in this matter. Together we will
> continue to pursue all strategies to end this unsafe practice. I ask for
> patience as we pursued appropriate court orders.

(Doc. 34-3, Ex. M at 130).

Mayor Cranley's request for assistance from Defendant Hamilton County Prosecutor Deters came to fruition on August 6, 2018 when Hamilton County filed a lawsuit against the City in the Hamilton County Court of Common Pleas,[5] alleging that homeless encampments violated Ohio laws. (*Id.*, Ex. N). Based on findings presented by Cincinnati Police Captain Michael Neville, assistant to the city manager Kelly Carr, and Interim Health Commissioner Marilyn Crumpton, the state court entered a temporary restraining order mandating that encampments south of Central Parkway to the Ohio River be cleared. (*Id.*, Ex. O at 174).

In order to comply with the August 6 state court order, residents of the Third Street Camp moved north of Central Parkway. (Doc. 34-1 ¶ 79). The following day, in response to the relocation of the homeless encampment, the Hamilton Court of Common Pleas granted Defendant Deters' motion to amend the area covered by the initial temporary restraining order "to include the additional area between I-71 and I-75 on the

---

[5] The case was assigned to Judge Robert Ruehlman, who was the month's equity judge, as Defendants knew.

East and West and St. Route 562 on the North." (Doc. 34-3, Ex. P at 179).

In response to the amended state court order, Plaintiff Phillips filed a second motion for a temporary restraining order in this Court. (Doc. 7). The Court held a hearing on August 8, 2019 on Plaintiff's second motion for temporary restraining order and heard oral arguments from counsel as well as testimony from witnesses for the City. The Court ultimately denied the motion primarily because Plaintiff failed to submit clear and convincing evidence that he was unable to obtain a bed at a shelter in Cincinnati. (Doc. 19).[6]

Following this Court's Order, on August 9, 2018, camp residents relocated to Gilbert Avenue in Cincinnati because it was outside the area covered by the amended state court temporary restraining order. (Doc. 34-1 ¶ 82). However, that same day the Hamilton Court of Common Pleas issued a second amended temporary restraining order to "include the entire geographic area of Hamilton County, Ohio but shall only be enforced so long as there is shelter space available." (Doc. 34-3, Ex. Q at 186). The Hamilton County Court of Common Pleas signed and entered a permanent injunction on August 16, 2018 (the "State Court Order"). (Doc. 34-3, Ex. S). The State Court Order requires the City to enforce the Encampment Policy and state laws R.C. 2911.21

---

[6] Although the Sixth Circuit has not addressed the issue, the Ninth Circuit has found that an "**ordinance violates the Eighth Amendment insofar as it imposes criminal sanctions against homeless individuals for sleeping outdoors, on public property, when no alternative shelter is available to them.**" *Martin v. City of Boise*, 920 F.3d 584, 604 (9th Cir. 2019) (emphasis added). As this Court has recognized, "the County Court's August 7, 2018 TRO effectively made being homeless in most of Cincinnati illegal. If Plaintiff [or others similarly situated] can show that there is not a bed available for [them] in Cincinnati shelters, then [they] can likely succeed on [the] Eighth Amendment claim." (Doc. 19 at 5).

(criminal trespass) and R.C. 3767 (public nuisance) by abating nuisance conditions associated with homeless encampments by maintaining public rights-of-way against their use as unlicensed and illegal encampments, removing illegal encampments from private properties that do not meet the Ohio Administrative Code campground requirements, such as having running water and toilet facilities, and seize any tents or other shelters being used in connection with unlicensed and illegal encampments and store these items for a period of 60 days, except that soiled items, garbage, and refuse shall be discarded. (*Id.*)

On August 29, 2018, Defendant City of Cincinnati filed an answer to the Second Amended Complaint. (Doc. 23). In lieu of an answer, Hamilton County Defendants filed a motion to dismiss on October 8, 2018. (Doc. 32). In conjunction with his response to the Hamilton County motion to dismiss (Doc. 37), Plaintiff filed a motion for leave to file a third amended complaint (Doc. 34). Plaintiff seeks to amend the complaint to (1) join Patrick T. Chin and the Greater Cincinnati Homeless Coalition as Plaintiffs, (2) join City Mayor John J. Cranley and City Solicitor Paula B. Muething as Defendants[7]; (3) provide additional factual allegations, including statistics on shelter-space availability and shelter

_____

[7] The Third Amended Complaint does not clarify whether claims against Mayor Cranley and City Solicitor Muething are brought against them in their individual or official capacities. In the briefing on the pending motions, Plaintiffs try to clarify that they are suing the Mayor and City Solicitor in their individual and official capacities. However, the pleadings must provide a short and plain statement in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Here, throughout the proposed amended complaint, Mr. Cranley and Ms. Muething are referred to simply as City Mayor and City Solicitor and there is no plain, clear statement that they are being sued in their individual capacity. Therefore, the Court interprets the claims as brought against the Mayor and City Solicitor only in their official capacity.

policies that prevent homeless individuals from obtaining shelter (*see* Doc. 34-1 ¶¶ 29–52); (4) supplement Count Three to include a substantive due process claim; and (5) add a claim of gross negligence under Ohio Revised Code ("R.C") 2744.02(A), interfering with civil rights R.C. 2921.45, and sham legal process under R.C. 2921.52.

The Third Amended Complaint alleges fourteen claims against various Defendants, yet for several claims it is very ambiguous which allegations apply to which Defendants and what facts support which claims.  Upon review of the Third Amended Complaint and the facts alleged therein, the Court construes the fourteen counts as:

> (i) The City's and Hamilton County's enforcement of the Encampment Policy and state trespass and nuisance laws violates the First Amendment (Doc. 34-1 ¶¶ 109–16);

> (ii) The City's and Hamilton County's enforcement of the Encampment Policy violates the Fourth Amendment (*Id. ¶¶* 117–21);

> (iii) The City's and Hamilton County's failure to provide sufficient pre-deprivation and post-deprivation notice that Plaintiffs' property would be taken or destroyed is a violation of Plaintiff's right to substantive and procedural due process (*Id.* ¶¶ 122–27);

> (iv) The City's and Hamilton County's enforcement of the State Court Order violates the Eighth Amendment because there is a lack of shelter space and/or shelter space is practicably unavailable in the City and Hamilton County (*Id.* ¶¶ 128–35);

> (v) The City's and Hamilton County's conduct violates Plaintiffs' Fourteenth Amendment right to equal protection of the law because the City's black homeless population outnumbers its white population (*Id.* ¶¶ 136–39);

(vi)     The City's and Hamilton County's practice of citing and/or arresting Plaintiffs for sleeping in public spaces violates their right to travel (*Id.* ¶¶ 140–43);

(vii)    The City's and Hamilton County's enforcement of the State Court Order unduly burdens persons without shelter and within the federal definition of "disabled" and "homeless" in violation of the Americans with Disabilities Act (*Id.* ¶¶ 144–56);

(viii)   The City's and Hamilton County's enforcement of the State Court Order is a state-created danger because it requires Plaintiffs to abandon encampments and subjects Plaintiffs to threat of violence and victimization by other members of the public (*Id.* ¶¶ 157–61);

(ix)     *Monell* liability against the Hamilton County Defendants (*Id.* ¶¶ 162–67);

(x)      *Monell* liability against the City, City Mayor, and City Solicitor (*Id.* ¶¶ 168–71);

(xi)     All Defendants committed gross negligence under Ohio law by acting with malicious purpose, in bad faith, and/or in a wanton or reckless manner by filing a complaint against the City knowing there was no bona fide case or controversy between them, by filing a joint motion for preliminary injunction before Plaintiffs' claims could be heard by this Court, and without joining Plaintiffs in that action (*Id.* ¶¶ 172–78);

(xii)    R.C. 2911 is unconstitutionally vague (*Id.* ¶¶ 179–81);

(xiii)   Defendants Prosecutor Deters, City Mayor, and City Solicitor interfered with civil rights by depriving Plaintiffs of constitutional rights (*Id.* ¶¶ 182–86); and

  (xiv) Defendants Prosecutor Deters, City Mayor, and City
     Solicitor used a sham legal process (R.C. 2921.52)
     because there was no bona fide dispute between the
     City and Hamilton County (*Id.* ¶¶ 187–91).

Both Defendant City of Cincinnati and Hamilton County Defendants oppose the motion to amend on different grounds. On November 29, 2018, the Court granted Judge Ruehlman's unopposed motion to dismiss. (Doc. 38). Both the Hamilton County Defendants' motion to dismiss and Plaintiff's motion to amend are ripe for review.

## II. STANDARD OF REVIEW

### A. Motion to Amend

Pursuant to Fed. R. Civ. P. 15(a), "leave to amend a pleading shall be freely given when justice so requires." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). Rule 15(a) embodies "a liberal policy of permitting amendments to ensure the determinations of claims on their merits." *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987). In deciding a party's motion for leave to amend, the Sixth Circuit has instructed district courts to consider several elements, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendments . . .." *Coe,* 161 F.3d at 341. In the absence of any of these findings, leave should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Ultimately, determination of whether justice requires the amendment is entrusted to the sound discretion of a district court.  *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

**B.      Motion to Dismiss**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (citing *Twombly*, 550 U.S. at 555).  In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint as to any particular, applicable defendant shall be dismissed. *Id.* (citing Fed. Rule Civ. P. 8(a)(2)).

## III. ANALYSIS

The Court will first address the City's opposition to Plaintiffs' motion to amend. Second, the Court will address Hamilton County Defendants' motion to dismiss and opposition to Plaintiff's motion to amend.

### A. Defendant City of Cincinnati

The City opposes Plaintiffs' motion to amend on two grounds: (i) the City opposes adding Mayor Cranley and the City Solicitor Muething as defendants because the proposed pleading fails to state a cognizable claim against the individuals, and (ii) the City opposes the proposed pleading because its newly alleged state law claims fail as a matter of law. Therefore, on these two grounds, the City argues the motion to amend is futile. "[L]eave to amend may be denied where the amendment would be futile." *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 569 (6th Cir. 2003)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Institute LLC v. Medical Mutual of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010). For purposes of a motion to dismiss, the Court must: (1) view the complaint in the

light most favorable to the plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

### 1. *Monell* **Liability (Count X)**

The City contends that Mayor Cranley and City Solicitor Muething are not proper defendants in regards to Count X of the proposed Third Amended Complaint, brought under *Monell v. N.Y. City, Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Monell* imposes municipal liability under 42 U.S.C. § 1983 when (1) a constitutional violation has occurred and (2) the municipality "is responsible for that violation," *Doe v. Claiborne Cnty.,* 103 F.3d 495, 505 (6th Cir.1996), based on the "execution of a government [ ] policy or custom," *Monell,* 436 U.S. at 694.

Plaintiffs allege that the City, Mayor Cranley, and City Solicitor Muething are liable under *Monell* because they were acting under state law when citing, arresting, or imprisoning citizens pursuant to the State Court Order, the Encampment Policy, or Ohio law and should have known they were violating Plaintiffs' constitutional rights. At this stage, the City does not oppose the *Monell* claim against the City itself, only the *Monell* claim pertaining to Mayor Cranley and City Solicitor Muething. Plaintiffs argue that Mayor Cranley and City Solicitor Muething are proper defendants under *Monell* in both their official and individual capacities.

The Court agrees with the City that Mayor Cranley and City Solicitor Muething are not proper defendants for this claim because the raison d'etre of *Monell* is to impose liability on a <u>municipality</u> under certain circumstances—not individuals. Even if Mayor Cranley or City Solicitor Muething were found to have instituted an unconstitutional

policy, liability under *Monell* would fall to the City.  Here, Plaintiffs' *Monell* claims will continue against the City, but *Monell* claims against Mayor Cranley or City Solicitor Muething in their individual capacities are improper.[8]  Moreover, to the extent that Plaintiffs bring *Monell* claims against Mayor Cranley and City Solicitor Muething in their official capacities, the claims are properly construed as against the City.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999) ("Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the governmental entity."); *Johnson v. Wash. Cty. Career Ctr.*, no. 2:10-cv-76, 2010 WL 2570929, *4 (S.D. Ohio June 22, 2010) ("Courts regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit.").  Accordingly, Plaintiffs' motion to amend is denied to the extent that the Third Amended Complaint seeks to add *Monell* claims against Mayor Cranley and City Solicitor Muething.

### 2.  State Law Claims

Plaintiffs bring three state law claims against Mayor Cranley and City Solicitor Muething, which essentially allege that their purportedly collusive actions with Hamilton County Defendants led to the State Court Order, which violates Plaintiffs' constitutional rights.  The City argues that these claims fail as a matter of law and that Mayor Cranley and City Solicitor are entitled to qualified immunity for each of these claims.  Pursuant to

---

[8] As discussed *supra*, the only allegations that Plaintiffs were bringing claims against the Mayor and City Solicitor in their individual capacity are found in Plaintiffs' briefing on pending motions, not in the Third Amended Complaint.

R.C. 2744.03, employees of political divisions are immune from liability unless the "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."  R.C. 2744.03(A)(6)(b).  The Court will address each state law claim in turn.

### a.  Gross Negligence (Count XI)

Plaintiffs allege that Defendants' gross negligence caused Plaintiffs to suffer deprivations of constitutional rights.  The Third Amended Complaint identifies to two acts by Mayor Cranley and one act by City Solicitor Muething that Plaintiffs contend were made with gross negligence:

> On July 30, the City Mayor made allegations of Hepatitis A, HIV, and spent needles among residents of the Third Street Camp with malicious purpose, in bad faith, and or in a wanton or reckless manner by offering no evidence to substantiate those allegations. (Doc. 34-1 ¶ 174).

> On August 3, 2018, Defendant City Mayor acted with malicious purpose, in bad faith, or in a wanton or reckless manner by asking Defendant Hamilton County Prosecutor to file a complaint against the City of Cincinnati based on unsubstantiated allegations.  (Id. ¶ 175).

> On August 16, 2018, Defendants County Prosecutor and City Solicitor acted with malicious purpose, in bad faith, and or in a wanton or reckless manner by filing a joint Motion for Permanent Injunction before Plaintiff's claims could be fully heard and resolved by this Court, and without joining Plaintiffs in that action. (*Id.* ¶ 177).

The Sixth Circuit has recognized that gross negligence is hard to define:

> Gross negligence [is] not a simple standard to define, but [it can be] stated that a person may be said to act in such a way . . . if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow.

*Jones v. Sherrill,* 827 F.2d 1102, 1106 (6th Cir. 1987) (internal quotation marks omitted)

By that definition, a claim of gross negligence would need to identify the precise risk and harm. Here, while Plaintiffs allege that Defendants' conduct was grossly negligent, they fail to assert with any specificity what risk followed each of the actions identified or acted unreasonably in disregarding probability of those unidentified risks. Therefore, Plaintiffs fail to adequately plead any acts that constitute gross negligence.

Accordingly, Plaintiffs' motion to amend is denied to the extent it seeks to add a claim for gross negligence.[9]

### b.  Interfering with Civil Rights (Count XIII)

The Third Amended Complaint includes a claim against Mayor Cranley, City Solicitor Muething, and Prosecutor Deters for interfering with civil rights. The statute at issue provides:

> (A) No public servant, under color of his office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.

> (B) Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree.

---

[9] As the Plaintiffs have failed to adequately plead a claim of gross negligence, the Court need not consider whether Mayor Cranley or City Solicitor Muething are entitled to qualified immunity related to this claim.

R.C. 2921.45

Yet this claim fails as a matter of law because R.C. 2921.45 is a criminal statute. Courts in Ohio have held that a plaintiff cannot assert claims based on an alleged violation of a criminal statute because "[c]riminal violations are brought not in the name of an individual party but rather by, and on behalf of, the state of Ohio or its political subdivisions." *Biomedical Innovations, Inc. v. McLaughlin,* 103 Ohio App.3d 122, 126, 658 N.E.2d 1084, 1086 (1995); *see also Brunson v. City of Dayton*, 163 F. Supp. 2d 919, 928 (S.D. Ohio 2001) (dismissing claim brought pursuant to R.C. 2921.45 because it is a criminal statute); *Thompson v. Rings*, No. 2:08-CV-230, 2008 WL 4981387, at *3 (S.D. Ohio Nov. 18, 2008), report and recommendation adopted, No. 2:08-cv-230, 2008 WL 5130417 (S.D. Ohio Dec. 4, 2008) ("It is clear, however, that Ohio criminal statutes do not give rise to civil liability.").

Accordingly, Plaintiffs' motion to amend is denied to the extent it seeks to add a claim for interfering with civil rights.

### 3. Sham Legal Process (Count XIV)

The final state law claim in the Third Amended Complaint is for "sham legal process," brought under R.C. 2921.52.

Section 2921.52(B) provides that "[n]o person shall, knowing the sham legal process to be sham legal process, do any of the following:"

(1) Knowingly issue, display, deliver, distribute, or otherwise use sham legal process; (2) Knowingly use sham legal process to arrest, detain, search, or seize any person or the property of another person; (3) Knowingly commit or facilitate the commission of an offense, using sham legal process; (4) Knowingly commit a felony by using sham legal process.

"Sham legal process" is an instrument that meets all of the following conditions:

(a) It is not lawfully issued;

(b) It purports to do any of the following:

(i) To be a summons, subpoena, judgment, or order of a court, a law enforcement officer, or a legislative, executive, or administrative body.

(ii) To assert jurisdiction over or determine the legal or equitable status, rights, duties, powers or privileges of any person or property.

(iii) To require or authorize the search, seizure, indictment, arrest, trial or sentencing of any person or property.

(c) It is designed to make another person believe that it is lawfully issued.

R.C. 2921.52(A)(4).

The statute defines "lawfully issued" as "adopted, issued, or rendered in accordance with the United States constitution, the constitution of a state, and the applicable statutes, rules, regulations, and ordinances of the United States, a state, and the political subdivisions of a state." R.C. Ann. § 2921.52(A)(1) (West).

Plaintiffs contend that Prosecutor Deters, Mayor Cranley, and City Solicitor used a sham legal process in obtaining the State Court Order because they were aware that there was no bona fide case or controversy between the City and Hamilton County.

Plaintiffs argue that the State Court Order was not lawfully issued because the matter was not justiciable as required by the Ohio Constitution. The Ohio Court of Appeals recently analyzed what constitutes a "justiciable matter":

> The Ohio Supreme Court has interpreted "justiciable matter" to mean the existence of an actual controversy, a genuine dispute between adverse parties. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas,* 74 Ohio St.3d 536, 542, 660 N.E.2d 458 (1996). The dispute must be "more than a disagreement; the parties must have adverse legal interests." *Kincaid v. Erie Ins. Co.,* 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 10. Thus a justiciable controversy exists for purposes of a declaratory-judgment action when there is a genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Burger Brewing Co. v. Liquor Control Comm.,* 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973); *see also Mallory,* 1st Dist. Hamilton No. C–110563, 2012-Ohio-2861, 2012 WL 2409677, at ¶ 10.
>
> The United States Supreme Court has adopted a similar standard, holding that "the question in each [declaratory-judgment] case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy * * * of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, *1031 Inc.,* 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). While not bound by the United States Supreme Court's interpretation of federal case-or-controversy jurisprudence, "Ohio courts have generally chosen to voluntarily follow justiciability doctrines developed by federal courts." Solimine, *Recalibrating Justiciability in Ohio Courts,* 51 Clev.St.L.Rev. 531, 555 (2004).

*Waldman v. Pitcher*, 2016-Ohio-5909, ¶¶ 21-22, 70 N.E.3d 1025, 1030–31

Here, the Court finds that Plaintiffs have adequately alleged facts, at this motion to dismiss stage, that demonstrate that the City and Hamilton County did not have adverse legal interests in the state court proceeding. Because the parties were not adverse, there arguably was no justiciable matter before the Hamilton County Court of Common Pleas.

Because, arguably, there was no justiciable matter before the state court, the State Court Order arguably was not rendered in accordance with the Ohio or United States Constitution and hence, arguably, the State Court Order was not lawfully issued. Plaintiffs have also adequately pleaded (but not yet proven) that the State Court Order deprived them of their constitutional rights and that it was intended to be used to make others believe it was lawfully issued. Therefore, the Court finds that Plaintiffs have stated a cognizable claim against Mayor Cranley for use of sham legal process.

However, the Court finds that Plaintiffs have not alleged facts that demonstrate that the City Solicitor used a sham legal process. The only allegation against the City Solicitor for this claim is that she represented to this Court that residents of the Third Street Camp would not be prevented from returning to their campsite after the City completed the August 3, 2018 cleaning. The Court finds that this single accusation falls well short of the pleading standard of Federal Rule of Civil Procedure 8 and does not state a cognizable claim against the City Solicitor. Accordingly, Plaintiffs claim for sham legal process against City Solicitor fails as a matter of law.

Next, the City argues that the Mayor is entitled to qualified immunity pursuant to R.C. 2744.03, which makes him immune from suit unless his "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6)(b). Plaintiffs contend that the Mayor's request that Prosecutor Deters sue the City in order to make homeless encampments illegal was done with a malicious purpose, in bad faith, or in a wanton or reckless manner.

> "Malice" is the willful and intentional design to harm another
> through conduct that is unlawful or unjustified. *Morrison v. Bd. of*
> *Trs. of Green Twp.*, 529 F.Supp.2d 807, 835 (S.D. Ohio 2007)
> (citing Cook, 103 Ohio App.3d at 90, 658 N.E.2d 814). "Bad faith"
> involves a "dishonest purpose, conscious wrongdoing, the breach of
> a known duty through some ulterior motive or ill will, as in the
> nature of fraud, or an actual intent to mislead or deceive
> another." *Id*. "Wanton misconduct" is the "failure to exercise any
> care whatsoever." *Id.*

*LeFever v. Ferguson*, 956 F. Supp. 2d 819, 839 (S.D. Ohio 2013), *aff'd*, 645 F. App'x 438

(6th Cir. 2016).

The Court finds that Plaintiffs have alleged plausible facts that a reasonable jury

could find that Mayor Cranley acted with a dishonest purpose and therefore in bad faith.

Facts uncovered in discovery may ultimately show that Mayor Cranley was not acting in

bad faith when he asked Hamilton County to sue the City, but at the motion to

amend/motion to dismiss stage, Plaintiffs have plausibly alleged that the Mayor acted in

bad faith in using a sham legal process to remove homeless encampments from the City

and Hamilton County. Therefore, Mayor Cranley is not entitled to qualified immunity on

the sham legal process claim.

Accordingly, Plaintiff's motion to add a sham legal process claim against City

Mayor Cranley, in his official capacity, is granted, but Plaintiff's motion to add a sham

legal process against the City Solicitor is denied. Therefore, Plaintiff's motion to amend

is denied to the extent it seeks to add City Solicitor Muething as a defendant.

**B.     Hamilton County Defendants**

The Third Amended Complaint brings claims against three Hamilton County Defendants: Hamilton County Court of Common Pleas, Hamilton County, and Prosecutor Deters.  Hamilton County Defendants seek to dismiss all claims in the Second Amended Complaint and oppose Plaintiffs' motion for leave to file the Third Amended Complaint.  The Court will apply the arguments in the briefings on both motions to determine if all claims against Hamilton County Defendants fail as a matter of law.  Hamilton County Defendants argue that Plaintiffs claims fail for several reasons—including lack of standing and that Plaintiffs' request for injunction is moot.  While the Court finds those arguments to be unmeritorious, ultimately each of the Hamilton County Defendants should be dismissed on different grounds.

**1.  Hamilton County Court of Common Pleas**

Plaintiffs claims against Hamilton County Court of Common Pleas fail because Ohio common pleas courts in Ohio qualify as arms of the state, and therefore "are immune from suits brought by citizens of Ohio."  *Lott v. Marietta Mun. Court*, No. 2:13-CV-00377, 2013 WL 6662836, at *4 (S.D. Ohio Dec. 17, 2013) (compiling Sixth Circuit and Southern District of Ohio decisions finding the same).  The Ohio Supreme Court has held:

> [A] court . . . is not sui juris.  A court is defined to be a place in which justice is judicially administered.  It is the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law.  Absent express statutory authority, a court can neither sue nor be sued in its own right.

*Malone v. Court of Common Pleas of Cuyahoga County*, 45 Ohio St .2d 245, 248 (1976) (internal quotation marks and citations omitted).

Accordingly, Hamilton County Court of Common Pleas is not a proper defendant and all claims against it are dismissed.

### 2. Hamilton County

Generally, Hamilton County is not sui juris and therefore cannot be sued. *See Lowe v. Hamilton County Dept. of Job & Family Services,* No. 1:05-cv-117, 2008 WL 816669, at *2 (S.D. Ohio Mar. 26, 2008) (finding that Hamilton County is not sui juris and suit must therefore be brought against its commissioners for the county's violation of an individual's rights). However, here, Plaintiffs brings *Monell* liability claims against Hamilton County under § 1983. Courts have found that a county is amenable to suit for purposes of a *Monell* claim under § 1983. *See, e.g.*, *Smith v. Grady*, 960 F. Supp. 2d 735, 744 (S.D. Ohio 2013) ("Hamilton County is not entitled to sovereign immunity under the Eleventh Amendment, and it may be sued in this Court under the ADA, Title VII, ADEA and FMLA regardless of its ability to sue or be sued under state law."); *Stack v. Karnes,* 750 F.Supp.2d 892 (S.D. Ohio 2010) (finding "the immunity afforded by the Eleventh Amendment [to be] inapplicable to Franklin County"). Therefore, the Court must consider whether Plaintiffs have pleaded a viable *Monell* claim against Hamilton County.

As discussed *supra*, to succeed on a *Monell* claim brought under § 1983, a plaintiff must prove that his "constitutional rights were violated and that a policy or custom of the municipality was the moving force behind the deprivation of the plaintiff's rights."

*Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010). Thus, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Nor does § 1983 permit a plaintiff to sue a government entity on the theory of *respondeat superior*. *Gregory v. City of Louisville*, 444 F.3d 725, 752–53 (6th Cir. 2006). "A plaintiff may only hold a local government entity liable under Section 1983 for the entity's own wrongdoing [which occurs when . . .] its official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Id.* A government entity's policy or custom can be unconstitutional in two ways: (1) it can be facially unconstitutional as written or articulated or (2) it can be "facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers." *Id.*

There are four types of *Monell* claims under which a plaintiff may prove the existence of a government entity's illegal policy or custom: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

The Third Amended Complaint contains no allegations that Hamilton County had an official illegal policy or custom. Instead the only potential allegation that Defendant Hamilton County had an illegal policy or custom relates to the action of Defendant Prosecutor Deters as an official with final decision-making authority. In Ohio, "a county prosecutor has final decision-making authority with regard to the operation of their

offices and discharge of their duties. *Burchwell v. Warren Cty., Ohio*, No. 1:13-cv-297, 2014 WL 1271058, at \*2 (S.D. Ohio Mar. 27, 2014), *aff'd*, 582 F. App'x 656 (6th Cir. 2014) (citing *Stone v. Holzberger*, 807 F. Supp. 1325, 1335 (S.D. Ohio 1992) *aff'd*, 23 F.3d 408 (6th Cir.1994) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).   Therefore, Prosecutor Deters is a final decision-maker for the purpose of Hamilton County municipal liability.

Regarding Plaintiffs' *Monell* claim, the only action taken by Prosecutor Deters is that he "acted in [his] official capacity and under color of law when filing a Complaint and Motion for *Ex Parte* Temporary Restraining Orders in case number A1804285." (Doc. 34-1 ¶ 164).  Even assuming arguendo that this single action by Prosecutor Deters was unconstitutional, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).  Again, Plaintiffs do not identify any existing, unconstitutional policy of Hamilton County.  The only potentially unconstitutional polices alleged by Plaintiffs are the City's Encampment Policy and the State Court Order – neither of which are Hamilton County policies.  Therefore, because Plaintiffs fail to allege that a policy or custom of Hamilton County was the moving force behind the deprivation of their rights, Plaintiffs claims against Hamilton County for municipal liability under *Monell* fail as a matter of law.

Accordingly, Hamilton County is dismissed from this action.

### 3. Prosecutor Deters

Hamilton County Defendants contend that Prosecutor Deters is entitled to absolute immunity because his actions were "intimately associated with the judicial phase of the criminal process." *Willitzer v. McCloud*, 6 Ohio St.3d 447, 449, 453 N.E.2d 693 (1983) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "State prosecutors are absolutely immune from civil liability when acting within the scope of their prosecutorial duties." *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. at 420).

A prosecutor is acting within the scope of their prosecutorial duties when "preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Resembling the allegations before the Court, absolute prosecutorial immunity has been extended in this district to "claims that the prosecutors conspired with the judge and the other defendants to obtain a wrongful conviction are barred by absolute immunity." *Brooks v. Harcha*, No. 1:10-CV-077, 2010 WL 597808, at *4 (S.D. Ohio Feb. 17, 2010). "Absolute prosecutorial immunity exists even when a prosecutor acts wrongfully or maliciously." *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989).

The Court finds that Plaintiffs have plausibly pleaded that Prosecutor Deters used a sham legal process to deprive Plaintiffs of their constitutional rights. Moreover, Plaintiffs have even alleged facts that, if true, support the conclusion that Prosecutor Deters acted wrongfully and in bad faith in bringing the nuisance action, knowing that it was not a true adversarial proceeding. Nevertheless, bringing a nuisance action clearly

falls within the scope of Prosecutor Deters' prosecutorial duties.  Therefore, Prosecutor Deters is entitled to the protections of absolute immunity.

The Supreme Court is cognizant that absolute prosecutorial immunity "does leave the genuinely wronged [party] without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.  But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest."  *Imbler*, 424 U.S. at 427.  Plaintiffs could be one such genuinely wronged party, but Prosecutor Deters is protected by absolute immunity and all claims against him are dismissed.

## IV.    CONCLUSION

Accordingly, for the reasons reflected above, the Court **ORDERS** that:

1) Plaintiff's motion for leave to file the Third Amended Complaint (Doc. 34) is **GRANTED in part and DENIED in part,** as set forth in this Order. Plaintiffs shall forthwith file the Third Amended Complaint, in accordance with this Order, as a separate docket entry; and

2) Hamilton County Defendant's motion to dismiss (Doc. 26) is **GRANTED.**


**IT IS SO ORDERED**.

Date:  5/29/2019                                              */s/ Timothy S. Black*
                                                             Timothy S. Black
                                                             United States District Judge